NATIONAL BANK OF AUGUSTA *v.* RICHMOND FACTORY *et al*

1. Where upon a petition in the nature of a bill in equity a receiver is appointed by the superior court to administer the assets of an insolvent corporation, and one of the creditors, not a party to the petition, but who has a right to make himself a party if he desire to do so, applies for equitable relief in an independent suit commenced by himself on his own petition in the same court after the other petition was filed, the relief should generally be denied, because while a creditor having a legal lien may stand out and be allowed to prosecute his legal remedies against the assets, his claim for equitable remedies should be asserted in the original suit under which the seizure was made.

2. That a business corporation is not a trader will not prevent creditors from proceeding against it under sections 3149(a) *et seq.* of

the code, these sections being applicable to all corporations not municipal, as well as to traders generally.

February 27, 1893.

Before Judge RONEY. Richmond county. June 25, 1892.

The National Bank of Augusta filed its petition against the Richmond Factory and Coffin, trustee. Service was made of the petition and of a temporary restraining order upon the president of the factory May 11, 1892, and upon Coffin the same day. Before the cause was heard the factory filed a demurrer and Coffin an answer, and the petition was amended. On June 7th, when the case came on to be heard, the factory filed its answer. Plaintiff proceeded to introduce evidence, and pending the discussion of the same, the court ordered the rule to be discharged and relief prayed for refused. Thereupon the bank tendered a bill of exceptions, and the question arose as to whether the court had passed upon the relief prayed for under the amendment, when the bank applied for and obtained another rule requiring the original defendants, the Union Wadding Company, Lesser individually, and Young, Stearnes and Lesser, as receivers of the Richmond Factory, to show cause why the relief prayed for under the amended petition should not be granted. A hearing being had, the court refused the relief prayed for under the original and amended petition. The bank then filed a motion that the court pass an order to protect its rights pending the writ of error about to be sued out, which motion the court refused upon the ground that in the case of the Union Wadding Company, hereafter mentioned, an order was passed which fully protected movant. To each of the rulings stated the bank excepted.

The petition of the bank, in its own behalf and that of all other bondholders of the Richmond Factory who

should be made parties, etc., alleged, in brief: In July, 1885, the stockholders of the factory authorized the president to issue thirty bonds of $1,000 each, dated September 1, 1885, running twenty years and bearing interest at six per cent. per annum, payable semi-annually on the first of April and October, for which coupons should be issued, with power to the president at his election to raise $30,000 or such part thereof as he might deem advisable, by sale of the bonds, or upon the note or notes of the corporation and hypothecation of the bonds as security, to be used as commercial capital. The president was also authorized to make a conveyance of the property of the corporation to two trustees, to be held as security for the payment of the bonds and coupons. The bonds were issued and a deed of trust executed and duly recorded. After the issuing of the bonds the president borrowed from petitioner on demand $20,000, hypothecating $20,000 of the bonds. This indebtedness has been reduced from time to time until it now consists of a promissory note of the factory for $5,000, maturing May 9, 1892, and plaintiff holds as security therefor $6,000 of the bonds, upon which there are coupons which have matured since the bonds were deposited, aggregating $1,080. Upon the maturing of said note the factory defaulted in payment; demand therefor was made by petitioner upon Lesser, the president of the corporation, and he failed and refused to make payment either of the note or past due coupons. By the terms of the deed of trust it was provided that in the event the bonds or any of the coupons should become due and should after demand remain unpaid for three months, each of the bonds outstanding should become due and payable, and the trustees or their successors were authorized to advertise the property mentioned in the deed for sale at public outcry, and if at the end of the advertisement the bonds or

coupons which had matured and upon which default had been made, should not have been paid, they should sell the property and proceed to pay the bonds and coupons, paying any excess to the factory or its assigns. One of the trustees named in the deed has died, and Coffin is the survivor but has no power to act except. in the manner provided for in the deed. On May 5,. 1892, the Union Wadding Company filed against the factory an equitable petition alleging that the factory was insolvent, and that the value of its property did not exceed $50,000, which sum included the amount of bonds issued by it and outstanding; which petition prayed for receiver, etc. Under this petition was granted a rule to show cause, returnable May 14th, and in the interval the factory was restrained from doing any act that would permit any creditor acquiring a preference by judgment or lien, or any suit or attachment, under proceedings commenced after the filing of the petition. The act under which the petition of the Union Wadding Company was filed, now embodied in the code, §3149(a) to §3149(g), has been construed to give no jurisdiction to the court where all the realty is under mortgage which would be consumed in the payment of the mortgage debt. Under the laws of this State the holders of any bonds secured by mortgage can foreclose the mortgage in equity, whenever default occurs in the payment of the principal or any part of the interest. No provision is made by the terms of this mortgage, except action by the trustees when default has occurred in the manner and for the period hereinbefore set forth. With the factory closed and not being operated, to make this provision of the mortgage available, the property would have to stand idle for many months. · If the receiver is appointed under the petition of the Union Wadding Company *et al.*, he can make no sale except subject to the mortgage, unless the mortgage creditor

should come in and make himself a party to said petition and consent thereto, which the trustee has no power to do for the bondholders, so that they must act alone for their protection. It is to the interest of all the bondholders that the property should be operated in order to make it available and realize its full value. It is not in the power of the trustee to do this, nor can it be done except by leave of the court, by means of its own officer appointed and authorized so as to bind all the bondholders when consented to by them, or it is made to appear to the court manifestly necessary that this action should be had for the protection of the property. The bank prays for a receiver; for an injunction against any receiver who may be appointed under the proceedings instituted by the Union Wadding Company, from taking possession, controlling, using or operating any of the property passing under the mortgage deed; for foreclosure of its mortgage and distribution of the proceeds among the bondholders, after payment of expenses, counsel fees, etc.; and for general relief. Attached as exhibits to this petition were copies of the mortgage deed and the note held by the bank, the note stating that six bonds of $1,000 each had been pledged to the bank as collateral.

The Richmond Factory demurred to this petition, upon the grounds, that the bank had an adequate remedy at law; that it was a secured creditor, as appeared from its pleadings; that if the petition contemplated being made a party to that of the Union Wadding Company, defendant's liability to the bank is uncertain, if any, as it cannot be fixed until plaintiff exercises its right of selling the collateral in its hands and appropriating the proceeds to this debt, and then, if the collateral did not bring enough to satisfy the debt, for the balance remaining defendant would acknowledge a liability and the National Bank could be made a party

plaintiff to the petition of the Union Wadding Company; and that the mortgage did not mature for sixty days, and therefore no rights thereunder could accrue to plaintiff. Coffin, trustee, answered that he had no interest in the suit other than as trustee; that a receiver for the factory and all its property, including that covered by the mortgage, had already been appointed in the cause of the Union Wadding Company, and the receivers were in possession of the property; that plaintiff was not entitled to foreclose the mortgage, because by its terms the default in payment of interest must continue at least ninety days, and then only this defendant is authorized to proceed by entering upon and selling the property; and he prays that if the mortgage is to be foreclosed, he be allowed to exercise the right therein given him of receiving and disbursing the money realized from the sale, by himself or by the receivers, and be allowed such compensation as the court may deem just. The Richmond Factory answered that the note held by the bank matured May 9, 1892, and that the factory did default in its payment; that the coupons attached to the six bonds held by the bank are not the property of the bank, but belong to said factory, as the indebtedness was based upon a note with the bonds attached as collateral, and the note, as it matured, was reduced and renewed and the interest always paid up to the date of the maturity, etc.; that the Union Wadding Company had filed its petition under which receivers had been appointed and authorized to dispose of the assets of this defendant, the petition of the Union Wadding Company having been filed May 5th, while that of the bank was not filed until May 10th; that the receivers mentioned were appointed May 14th, and this defendant had turned over all its assets to them.

The amendment to the petition of the bank alleged: At the time of the filing of its petition there had been

v 91-19

filed the petition of the Union Wadding Company,. which made profert of the mortgage in question. No service had been made of this petition and order accompanying it at the filing of the petition of the bank,. under which petition the factory and Coffin, trustee, were required to show cause on May 14, 1892, the same day upon which the rule under the petition of the Wadding Company had been made returnable, why the relief prayed for should not be granted. On May 14th,. the rule granted in the case of the bank was, on motion of Coffin trustee, adjourned over to May 21st, and the; court proceeded to hear the case of the Wadding Company, in which service had been made on the same day with that of the bank's petition, but second in order of time. In response to the rule granted in the case of the Wadding Company the factory filed its answer and Lesser filed an intervention, and an order was moved and granted to make Coffin, trustee, a party. Young, Stearnes and Lesser were, on May 14th, appointed receivers, with direction to take possession of the assets of the defendant and sell the property on the first Tuesday in July,. " said sale to confer on the purchasers thereat a free and unencumbered title, free from all liens and encumbrances whatsoever, which said liens and encumbrances shall attach to the proceeds of said sale without prejudice, that said purchaser or purchasers shall have the option of paying for said property in bonds at their face value,. or partly in bonds and partly in cash." On May 16th, a petition was presented by the receivers, asking for authority to negotiate a loan, in the nature of administration, to be a first lien upon the corporate assets. No notice was given to any one, nor was this petition sworn to, and the court granted the prayer of it. Thereafter the original petition of the bank came on to be heard, when it was adjourned over until June 4th. At this. time the only cause shown by the factory was a demurrer,.

and by the trustee an answer not under oath, both taking the position that default in the payment of interest should continue at least ninety days, and then only was the trustee authorized to proceed as in case of maturity of the debt.   On May 26th, petitioner had served upon the Wadding Company, Lesser and the receivers a notice that upon the hearing of the case it would move, if in the opinion of the court it was necessary to grant the relief prayed for, to make parties defendant of the creditors individually and of the receivers, and to enjoin the receivers from so far acting under the order of their appointment as to make a sale as therein directed, and also from acting under the subsequent order of May 16th, to negotiate a loan, etc., and also, if in the opinion of the court it was necessary, to consolidate the two cases and place the case under the direction of the plaintiff and other bondholders.   Thereafter there appeared in a newspaper an advertisement of the sale of the property of the factory.   No objection will be urged to this sale as advertised by the trustee, who is cashier of another bank named which is a creditor to the amount of $10,800, the holding of which position and his failing to take any action puts him in a position antagonistic to the true interest of the bondholders. The advertisement does not state that the sale is to be made either subject to or free from the lien of the mortgage, although it gives the option to the purchaser of paying part cash and the balance at par value, with past due and unpaid coupons on the bonds, but does not specify what portion shall be paid in cash and what portion in bonds.   The action of the court in the appointment of the receivers with the authority specified in the orders mentioned, and the action of the receivers in the advertisement of the property, is illegal and void, for the following reasons : The act under which a creditor's bill is filed is one that is construed strictly, and no

pre-existing lien is interfered with thereunder, unless fraud or collusion is charged, or the parties holding the lien voluntarily come into the suit; and the action of the trustee was not such appearance as would give the court jurisdiction over the bondholders. The court has no jurisdiction to pass an interlocutory order in vacation to sell realty free from liens and under any circumstances for anything other than cash, save by consent of all the parties in interest, and no such consent was given by the bondholders, or even by the trustee. The factory and the trustee were each restrained, under the provisions of the original order in this case, from changing the status of the property while said order continued of force, and the taking possession of the property by the receivers and advertising the same for sale was a violation of this order. The order appointing the receivers does not define what bonds of the corporation could be accepted in part payment for the property, and does not limit the authority of the receivers to such bonds as are secured by the mortgage. The order authorizing the issuing of receiver's certificates was granted without notice to or consent by any one, was passed in vacation, and established a lien prior even to that of the mortgage. As evidence that the mortgage covers the entire assets, the bank calls attention to the averment of the receivers that the corporation has no assets available from which said sum could be secured. The bank prays that the receivers, the Wadding Company and Lesser be made parties defendant; that the sale be restrained; and that the receivers be enjoined from paying the certificates, except out of the assets of the corporation other than those upon which the lien of the mortgage rested. Exhibited to this amendment was the petition of the Wadding Company, which alleged that the assets of the factory would not exceed in value $50,000; that in addition to the

$30,000 in bonds, the factory was indebted to various creditors who held no security therefor, $20,342, making a total indebtedness of $50,342 as by an exhibit attached; and that petitioner, besides being a stockholder in the factory to the extent of $20,500, was its creditor in the sum of $8,000 evidenced by promissory note, due and unpaid, etc.; that the stockholders had found it necessary to shut down the mill and suspend operations for want of funds; that the machinery was idle and likely to deteriorate; that there was no prospect whatever of the factory being able to resume operations, and the creditors, especially those whose debts were unsecured, would lose their debts wholly or in a great part unless protected. The petition prayed for the appointment of a receiver to collect the assets; that the assets be sold and the proceeds applied to the payment of the indebtedness in order of respective lien and priority; that parties might be made from time to time of such persons as might be interested, etc. Also, the answer made by the factory to this petition. Also, the petition and order thereunder making Lesser a party to the cause of the Union Wadding Company against the factory, Lesser claiming to be a creditor in the sum of $7,728.75. Also, an order making Coffin, trustee, a party. Also, the order appointing the receivers, dated May 14, 1892; the petition of the receivers for an order to negotiate a loan to the extent of $1,500, and the order authorizing the negotiation of such loan. Also, the newspaper advertisement of the sale of the property.

To this amendment the Union Wadding Company answered: At the time of the filing of its petition the unsecured indebtedness of the factory amounted to $20,342.40, and the secured indebtedness to $30,000. The factory then owed and now owes it $8,000 with interest, unsecured, which constitutes more than one third in amount of the unsecured debts; and its petition

charged that the factory was insolvent. On May 5th, the judge sanctioned the petition and issued the rule returnable May 14th, to show cause why the relief prayed for should not be granted, which rule was duly served May 11th. On May 14th, Lesser, an unsecured creditor, was made party plaintiff, making the amount of unsecured indebtedness represented by petitioners $15,728.75. On the same day Coffin, trustee, was made party defendant, and acknowledged service, etc.; and on the same day the factory filed its answer in which, while denying the alleged causes leading to insolvency, it admitted the fact of such insolvency; and on the same day, after full consideration and argument, the court adjudged the corporation to be insolvent, appointed receivers and instructed them to sell the property. The selection and appointment of the persons named as receivers was made by the court at the earnest solicitation and request of creditors representing a large proportion of claims secured and unsecured, including bondholders to the amount of $22,000 and stockholders to the amount of $70,000, as would appear by reference to the written request attached. In pursuance of the order the receivers advertised the property for sale and in the terms of the order. The judge, with a view of protecting all parties in interest and preventing a sacrifice of the property, subsequently fixed a reserve bid on the same of $45,000. The only liens on the property are the $30,000 of bonds. The National Bank of Augusta refused and now refuses to become a party to the petition of the Union Wadding Company, and, subsequently to the filing and sanctioning and service of said petition, filed a separate petition in which the same relief and none other is prayed, and served respondent with notice that it would move the court to revoke the appointment of the receivers, etc. All the jurisdictional facts under the pleadings in the case of the Union Wad-

ding Company are *res adjudicata*, so far as the parties thereto are concerned, and such jurisdiction cannot be attacked by one who refuses to become a party to the record, especially where the party making such attack is a bondholder represented by the trustee, who is a party to the petition first filed. Equity having acquired and taken jurisdiction of the subject-matter and the parties interested in the litigation, will not revoke its appointment of receivers at the instance of a creditor filing a second petition, but will retain such jurisdiction and make necessary parties to do complete equity. Wherefore respondent prays that the National Bank of Augusta be made a party to the petition of the Union Wadding Company, etc. Among the exhibits attached to this answer was an order of June 7, 1892, modifying the order appointing the receivers, and directing the sale so as to place a reserve bid of $45,000 on the property as a whole, and directing the receivers not to sell the property for a less sum.

The amendment was also answered by the receivers who stated, in addition to matters already hereinbefore mentioned: They are discharging their duties faithfully and to the satisfaction of all the parties to the record, including bondholders to the amount of $22,000. They have taken no action by which the debt of plaintiff is imperiled, but on the contrary the payment of plaintiff's debt is rendered absolutely sure from proceeds of sale under pending advertisement. They know of no reason why their appointment should be revoked and others appointed in their place, or they themselves reappointed under the petition of plaintiff. Plaintiff by attorney was present at the hearing resulting in their appointment, and, although requested by counsel for the Wadding Company to do so, refused to become a party to said petition, or to intervene or show cause why they should not be appointed. $30,000 of insurance on the

property has been cancelled by direction of the insurance companies, since their appointment, and such insurance as they have been able to continue is conditioned upon the sale of the property July 5th, and the vesting of title in the purchaser relieved of pending litigation, and the entire insurance will be cancelled should the property for any cause not be sold as now advertised, and thus irreparable loss may result. Respondents are officers of court acting solely under its instruction, and while so acting cannot be made parties to an independent bill covering the same subject-matters and none other. Their act complained of by plaintiff is the act of the court itself and cannot be attacked collaterally.

FRANK H. MILLER, for plaintiff.

J. 'R. LAMAR, C. H. COHEN and HARPER & BROTHER, for defendants.

BLECKLEY, Chief Justice.

1. From the statement of facts in the official report it will be seen that the petition under which the receiver was appointed was filed before that which the National Bank of Augusta brought against the Richmond Factory, the common debtor, and the principal defendant in both petitions. The receivership covered all the assets of the factory company—that company being an insolvent corporation. As one of its creditors, the National Bank of Augusta had a right to make itself a party to the cause in which the receiver was appointed, and thereby to obtain all the equitable relief to which it was entitled. Instead of so doing, it sought that relief in an independent suit, commenced by itself in the same court, urging the appointment of another receiver. The application for this relief and for the new receivership was passed upon and denied after a receiver in the first suit had been appointed, and a judicial seizure of all of the assets of the insolvent corporation had thus been made.

The present writ of error deals alone with equitable elements and with the proper procedure applicable to the same. It is a "fast" writ, based on interlocutory rulings. Why should the same court, after having seized all the assets by one receiver, make another seizure of part of the assets by another receiver? Or why should it administer a part of them in a second suit when it can administer the whole in the first? Why should matters be thus complicated? We are clear that, as a general, if not an universal rule, all creditors seeking to assert equitable remedies against assets of which the court has taken charge by a receiver, should become parties by intervention or otherwise, to the cause in which the receiver was appointed, and prosecute their remedies in that cause alone. Creditors who stand out may be allowed to prosecute their legal remedies against the assets, if they can make them available; but if they have to invoke the exercise of equitable powers by the same court, their legal remedies are not available and they are in no condition to proceed by separate and independent actions.

2. It is not a sound construction of section 3149(a) of the code, that a corporation not municipal must be a trader as well as insolvent in order for its assets to be subject to seizure under a creditor's bill (or a petition in the nature of a creditor's bill) as provided for by that and succeeding sections. The language is: "In case any corporation not municipal, or any trader, or firm of traders, shall fail to pay," etc., etc. It is evident that all business corporations are comprehended, whether their business be trading or not, though natural persons who are not traders, and partnerships which are not traders, are excluded. Traders in general, as a class, and corporations not municipal, as another class, are within the scheme and the words of the statute.

There was no error calling for reversal.

*Judgment affirmed.*