THE EMPIRE LUMBER COMPANY *v.* KISER & COMPANY *et al.*  | 91  643 |
| 96  320 |

1. One who furnishes a saw-mill with corn, oats, hay, bran, etc., with which to feed the mules of the owner of the mill used in carrying on the work thereof, has a lien under section 1985 of the code for the price. And when the owner in giving his orders for these articles represents to the seller that they are wanted as provisions for the mules, such owner will be estopped by the representation, and cannot set up in resistance to the lien claimed that some of the provisions were not in fact so applied, but were sold by him in general commerce from a trading establishment which he kept on the saw-mill premises. Whilst the representation might not, and

probably would not, bind the general creditors of the owner, the owner himself, where he alone complains, will not be heard to urge his own bad faith.

2. Where the accounts for the provisions were settled by promissory notes, some of which were not due when the petition was filed under the insolvent trader's act, a lien as to the whole may nevertheless be allowed, the immature notes having become mature before the master's report was made up. The lien claimant having come in by intervention, and the assets of the debtor being all in the hands of a receiver, a demand for payment and an affidavit to foreclose the lien would be dispensed with, a foreclosure by intervention being, under the circumstances, a proper substitute for the statutory foreclosure provided for by section 1991 of the code.

3. The evidence warranted the court in finding and holding that the lien claimed existed as to the whole amount of the indebtedness.

4. Relatively to the lien of laborers, mentioned in section 1984 of the code, and to liens for timber, logs, provisions, etc., mentioned in section 1985, all saw-mills, whether they be in fact fixtures or not, are treated by the statute as personalty, and as to them these liens do not have to be recorded, and when foreclosed in the statutory method, section 1991 is to be pursued; but where the foreclosure is either made or to be enforced on a petition in the nature of a creditors' bill, the court, though it must treat the proceeds of sale, so far as the mill is concerned, as derived from personalty, may have the mill sold with the land on which it is situated for one gross sum, and afterwards, if necessary, ascertain by evidence what proportions of this sum should be treated, respectively, as proceeds of the land and of the mill. Direction is given that if, in the discretion of the court, this mode of sale be advisable in the present case, it be adopted, and the decree for sale be modified accordingly. The word "mill," as used in this note, comprehends all engines, boilers, machinery of every kind, and all hardware, implements, tools, etc., connected with and used, or proper for use, in the mill establishment, treating it as a going concern for the purpose for which it was erected. It does not include any buildings or any detached personalty such as vehicles, draft animals, etc.

May 2, 1893.    Argued at the last term.

Before Judge Roberts. Dodge superior court. March adjourned term, 1892.

Hill, Harris & Birch, for plaintiff in error.

DeLacy & Bishop, J. E. Wooten, Smith & Clements, P. L. Mynatt & Son, John L. Hopkins and Estes & Estes, *contra.*

LUMPKIN, Justice.

1. The assets of the Empire Lumber Company being in the hands of a receiver upon a petition filed by Kiser & Co. and others under the insolvent trader's act, one Wester sought to set up a statutory lien against the company and its saw-mills and the product thereof, for supplies furnished by him which were necessary for carrying on the business of the mill. Wester resided in Chattanooga, and J. C. Anderson, the president of the lumber company, while in that city, gave frequent orders to him for oats, corn, hay, bran, etc., to be sent to Empire, Ga., representing that these supplies were wanted to feed the mules of the company used in carrying on its work. There can be no doubt, we think, that a lien for such supplies arises under section 1985 of the code. We further think the company is estopped by the representations made by its president as to the purpose for which the articles were ordered, and consequently cannot be permitted to resist the lien by showing that some of the supplies were not in fact used in feeding the mules, but were sold in general commerce from a store conducted by the company on the saw-mill premises. While the company or its officers might in the utmost good faith divert the supplies from the use for which they were purchased, it would be legal bad faith to allow the company to set up this fact for the purpose of defeating the lien of one who had the right, because of the representations made to him when he sold the goods, to assume that the circumstances under which he sold would entitle him to a lien for the price of his provisions. It may be, that as to the rights of other contesting creditors, his lien would not be good except as to the price of so much of the provisions as was actually used in feeding the mules while at work in carrying on the business of the mill. This question, however, does not arise in the present case, because the

only party contesting the allowance of the lien claimed by Wester is the lumber company itself. We agree, therefore, with the master and the court below in holding that no part of Wester's lien was lost because, in point of fact, the company sold in general trade some of the supplies furnished by him.

2. It seems that in purchasing these supplies, J. C. Anderson, as president of the company, executed and delivered to Wester promissory notes in settlement of his accounts, and that there were frequent renewals of these notes. Some of them were not yet due when the original petition to put the assets of the company into the hands of a receiver was filed, but they became due before the master's report was finally made up. He allowed Wester's claim of lien except as to the notes just mentioned, and as to them denied the claim on the ground that they were not due when Wester's intervention was filed, and therefore no proper demand for payment had been, or could be, made by him. The court approved the report of the master in so far as it allowed Wester's claim of lien upon the past-due notes, but overruled so much of it as denied the lien on the other notes, and established his lien for the entire amount of his claim. There can be no doubt that the action of the court in allowing the lien upon the past-due notes was right. The remaining question is: could Wester enforce his lien as to the notes which did not mature until after his intervention was filed? Ordinarily, he would have an undoubted right to prosecute his lien at any time within one year after the debt for the supplies furnished became due. This right being absolutely secured to him by statute, we do not think it can be defeated by putting the assets of his debtor in the hands of a receiver before the expiration of the time within which he could foreclose his lien. After a receiver has been appointed, even if the debt for which a creditor had a

lien were due, the latter could make no effectual demand for its payment. The debtor could not pay, for he would have nothing with which to meet such demand. The receiver would have no authority to pay without an order of the court, and this the creditor could not obtain without being a party to the case in which the receiver was appointed, and probably the court would in no event grant such order before it was ready to render a final decree. Consequently, a demand upon either the debtor himself or the receiver would be utterly futile and useless. Again, even if this difficulty could in any manner be overcome, the creditor would not be allowed to proceed with the enforcement of his lien by the ordinary process, but would be obliged to go into the court of equity and assert his rights along with the other creditors. We therefore think it reasonable, just, and entirely consistent with the true spirit and meaning of our law, that, under the circumstances recited, the demand usually requisite to a foreclosure of a lien is necessarily dispensed with. Nor do we think it material that the debt was not due either when the petition was filed, or when the creditor claiming the lien intervened. If the debt matures before the master's report is finally made up and filed, we see no good reason why the lien may not be then allowed and set up. In fact, so doing would expedite the final termination of the litigation, and render it unnecessary to hold up any of the assets in the receiver's hands to await a foreclosure of the lien in the usual way. It seems clear from what is said above, that the statutory affidavit to foreclose would likewise be dispensed with, and the foreclosure could be had by the intervention itself, it being a proper substitute, in a case like the present, for the ordinary affidavit.

3. The evidence was sufficient to warrant the court in finding and holding that the lien claimed by Wester

existed as to the whole amount of the indebtedness, and consequently we find no error in this respect in the judgment rendered.

4. Among other things included in the master's voluminous report in the present case, of which the intervention filed by Wester was only a branch, was a finding by the master to the effect that all the machinery, including boilers, engines, locomotives, saws, shafting, pulleys, belts, knives, tools of various kinds, etc., in and about the saw-mill, were personal property, and the master recommended that the same should be administered as such. To this finding the lumber company excepted, alleging the evidence showed that the engines and other machinery were affixed to the realty, being bolted down, and were therefore parts of the realty, and that the master should have found that only those things not attached to the realty, such as tools, etc., were personalty. The court, by final decree, overruled these exceptions and affirmed the master's report, to which ruling the lumber company excepted. Whether the articles which the company insisted should be treated as realty ought, under the general law of fixtures, to be so regarded or not, is not material to a proper solution of the question now presented for consideration. Counsel on both sides filed elaborate and well-prepared briefs upon the law of fixtures, an examination of which made it manifest that as to many of the items of property enumerated in the master's report, the law is in considerable doubt and confusion as to whether or not, under ordinary circumstances, they should be classed as realty or as personalty. In the view we take of our lien laws, it is unnecessary in the present case to determine definitely what is the precise status, as to its being realty or personalty, of each and all of the several articles of property above referred to.

It is essential to the validity and foreclosure of liens

on realty that the same should have been recorded within the time prescribed by law. It would seem that the lien claimed by Wester had not been recorded, and therefore it could not be enforced against any property of the company which with reference to this lien is to be treated as realty. The law does not require, however, that the lien given by section 1985 of the code (under which Wester claims) should be recorded, and therefore his lien may be enforced against any property of the company which can properly be regarded as personalty. When such a lien is foreclosed in the statutory manner, the requirements of section 1991 of the code must be observed; but we have already seen that a valid foreclosure may be had by proper proceedings in connection with a petition in the nature of a creditors' bill. The necessity of recording the liens of mechanics, machinists, and others, allowed by section 1979 of the code, results from the positive enactment of section 1980, that the claim of lien in such cases must be recorded, and that on failure to do so the lien shall cease. Section 1979 deals with mills, factories, etc., and real estate, treating them as permanent establishments, and providing that those who contribute to erecting or keeping them in repair shall have liens upon the same as plants, including the machinery, etc., used therein. It therefore makes no difference whether the machinery, etc., be in fact personalty or not, as the statute treats the entire establishment, with all its equipments, as realty, relatively to the lien allowed by section 1979. It is the manifest purpose of the statute that these liens shall cover not only the land upon which the mills, factories, etc., are situated, but also the structures themselves, and all the appliances necessary to their existence and complete running order as such establishments. On the other hand, relatively to the lien of laborers mentioned in section 1984 of the code, and to the liens for

timber, logs, provisions, etc., provided for by section 1985, all saw-mills, and the machinery connected with the same, whether they be in fact fixtures or not, are manifestly treated by the statute as personalty. The liens allowed by these sections are for labor, and for supplies which are consumed in their immediate use, and neither section contemplates any lien at all upon the realty upon which the mills are located. For the purposes of these sections, therefore, the mills, etc., must be regarded as personalty. This being so, it is entirely immaterial, so far as Wester's lien under section 1985 is concerned, whether any of the equipments with which the saw-mill in question is supplied be, in fact, fixtures or not. In case of statutory foreclosure, the property on which the lien rested would have to be sold separately and apart from the land, which would involve, of course, a dismemberment of the establishment. But where the foreclosure, as in the present case, is made in an equitable proceeding, the court may, if of the opinion that so doing would be advantageous to the creditors, have the mill sold with the land on which it is situated, for one gross sum. After the sale, it can, if necessary, be ascertained by evidence what portions of the whole amount thus derived should be treated, respectively, as proceeds of the land, and as proceeds of the mill. In the final distribution, the amount realized as the proceeds of the mill should be disposed of as derived from the sale of personalty; and, of course, the proceeds of the land should be treated as having been derived from the sale of realty.

The direction given at the end of the fourth headnote states in what sense the word "mill" is used in this connection.    *Judgment affirmed, with direction.*