## HARP *et al. v.* ABBEVILLE INVESTMENT AND CONSTRUCTION COMPANY *et al.*

1. When it appears that all of the opposing interests in a case have become vested in one person, the suit becomes a nullity, and the court in which such suit is brought will, on motion, strike the same from the files. The above is true notwithstanding the suit may have been originally brought in good faith to assert a right of the plaintiff, and was until the transfer to the opposing party vigorously pressed. It follows from the foregoing that the pendency of a suit originally filed for the purpose of administering the assets of an insolvent corporation, in which all opposing interests have become vested in one person, who was also the receiver in the case, would not be a sufficient reason to prevent a creditor of such corporation from filing an independent suit seeking to subject certain equitable assets of the corporation to the payment of his debts.

2. The petition set forth a cause of action, and should not have been dismissed on any of the grounds taken in the demurrer.

Argued May 13, — Decided July 21, 1899.

Equitable petition. Before Judge Smith. Wilcox superior court. August 31, 1898.

*Cutts & Lawson*, for plaintiffs.

*Hardeman, Davis & Turner* and *T. C. Taylor*, for defendants.

COBB, J. James Harp, C. S. Wallace, F. C. Hand, George W. Feagin, and S. C. Stallings brought a petition, praying for equitable relief, against the Abbeville Investment & Construction Company (hereinafter referred to as the Construction Company) and R. V. Bowen, alleging, in substance, as follows: The Construction Company is indebted to James Harp $—— upon a contract under seal, to C. S. Walton $42.50, besides interest, on a judgment, to F. C. Hand $200, besides interest, on an account for services as civil engineer, for which suit is pending, to George W. Feagin $359.38, besides interest, on account for services as civil engineer, for which suit is pending, to S. C. Stallings $55.90, besides interest, on a judgment, and to W. A. Coble $57, besides interest, on a judgment. On April 23, 1890, the Construction Company made a contract with the Abbeville & Waycross Railroad Company (hereinafter referred to as the Railroad Company) to construct a railroad from Abbeville in Wilcox county to a designated point in Irwin county, for the consideration of $10,000 per mile in bonds of the Rail-

road Company and certain subscriptions referred to in the contract. The Construction Company became indebted to Levis & Company in the sum of $18,488.17 for steel rails, and it was agreed between the two companies that bonds of the Railroad Company to the amount of $216,000, being the full amount authorized to be issued on eighteen miles of road, should be issued and delivered to the Real Estate Trust Company of Philadelphia (hereinafter referred to as the Trust Company), to hold as collateral security for the debt due Levis & Company, and upon payment of the same the bonds were to be returned to the Railroad Company to be held until there was a settlement with the Construction Company. There were some payments made on the Levis & Company debt and extensions were made once or twice. The Construction Company, being unable to pay the balance due Levis & Company, sought to devise a plan by which a sale of the bonds might be prevented, the contract made when the bonds were deposited authorizing a sale if the debt was not paid. Levis & Company agreed that if $5,000 was paid in cash, the balance could be paid in installments. The two companies passed resolutions providing that if any members of either corporation should advance the money required, and sign the notes to be given under this arrangement, they should be subrogated to all the rights of Levis & Company in the bonds deposited with the Trust Company. Under this arrangement the debt due Levis & Company was paid and the bonds were turned over to J. A. J. Henderson and S. P. Lasseter as "trustees." In 1895 R. V. Bowen and others, who had advanced the money to pay the Levis & Company debt, filed an action of bail-trover against Henderson and Lasseter, to recover one of the notes payable to Levis & Company and all of the bonds which Henderson and Lasseter had received under the arrangement above referred to. The defendants failed to give the bond required by law, and the plaintiffs having given the required bond, the bonds of the Railroad Company were delivered to them. Bowen has acquired the interests of all other persons in the Levis & Company debt and is now the sole owner of the same. While constructing the railroad the Construction Company became in-

debted to Lewis, Leonard & Company (hereinafter referred to as Leonard & Company), to whom it, on March 17, 1891, delivered its promissory note for $26,494.98, due October 1, 1891, indorsed by George W. Haskell, Lasseter, Ham & Company, Drew & Brothers, M. Henderson, Philip Brown Sr., J. R. Monroe & Company, J. W. Paulk, Bowen & Reid, and R. V. Bowen. This note was not paid, but the same was taken up by Lasseter, Ham & Company, Drew & Brothers, Paulk & Henderson, and R. V. Bowen, who paid the same by giving their notes for the debt. When these notes became due they were taken up and new notes given by Lasseter, Ham & Company, Drew & Brothers, and R. V. Bowen. These last notes were paid by Drew & Brothers and R. V. Bowen, to whom Lasseter, Ham & Company transferred all their interest in the former notes as well as all interest in the Construction Company and the Railroad Company. In 1895 Drew & Brothers, Bowen & Reid, R. V. Bowen, and Lasseter, Ham & Company, the latter suing only for the use of the other petitioners, filed a suit against the Construction Company, J. R. Monroe & Company, Philip Brown Sr., M. Henderson, J. W. Paulk, and George W. Haskell, praying that the liability of each of the defendants to plaintiffs growing out of the Leonard & Company debt might be ascertained and judgments rendered accordingly, and that a receiver be appointed to take possession of all the property of the Construction Company. A copy of this petition is attached to the petition in the present case as an exhibit. Under this proceeding R. V. Bowen was appointed receiver of the Construction Company. It is alleged that the suit just referred to is fatally defective and all proceedings thereunder are void, because it involved separate and distinct causes of action, and for the further reason that R. V. Bowen has acquired all the interests of his coplaintiffs as well as all interests in the Construction Company which were adverse to him, and that there is now no conflicting interest in the case and consequently no subject-matter for litigation, so far as the Construction Company is concerned. R. V. Bowen has thus become "ineligible as receiver," yet he has had no other person appointed in his place and has made no effort to realize on the assets of the

Construction Company, and claims the railroad bonds in his possession, not as receiver, but as owner. The contract between the Construction Company and the Railroad Company provided that the railroad should be completed in one year, which was not done, when the two companies agreed that the Railroad Company should take possession of the road and operate it as far as completed, it being expressly provided that this taking possession should not be construed as an admission that the company had fully complied with its contract, but the rights of the parties were to remain in statu quo.

On April 21, 1892, the Trust Company (the trustee in the deed of trust executed by the Railroad Company), suing for the use of Paulk, Henderson & Company, Lasseter, Ham & Company, R. V. Bowen, Drew & Brothers, S. N. Mitchell, J. D. Maynard, and the Construction Company, filed a suit, alleging that there had been a default in the payment of the interest coupons on the $216,000 of bonds of the Railroad Company, which had been deposited with the Trust Company as collateral security for the Levis & Company debt in the manner above explained, and alleging that the Railroad Company was unable to pay its debts, and praying for the appointment of a receiver. Under this proceeding R. V. Bowen has been appointed receiver. Plaintiffs had been informed that a defense would be made to the suit just referred to, but soon after the suit was filed negotiations for an amicable settlement of all disputes between the two companies were commenced, and while these negotiations were pending the Railroad Company refrained from filing any defense. In June, 1892, the owners of a majority of the stock in the Railroad Company sold their stock in the same to Paulk, Henderson & Company, Lasseter, Ham & Company, Drew & Brothers, and R. V. Bowen, the consideration for the sale being eleven of the bonds of the Railroad Company which were to be issued as first mortgage bonds, bearing interest from July 1, 1892, each bond to be indorsed by the parties above named, who were at that time owners of a large majority of the stock of the Construction Company and had control of the same. R. V. Bowen has acquired the interests of the other parties named, and now owns a large majority of the stock

of the Railroad Company, and by reason thereof has absolute control of the Railroad Company. Except as to the eleven bonds above referred to, no change has been made in the status of the bonds deposited with the Trust Company to secure the Levis & Company debt, and R. V. Bowen as successor to the rights of Levis & Company has no other interest in such bonds than Levis & Company would have had, that is, to enforce payment of the debt which they were deposited to secure; but notwithstanding this fact, the suit of the Trust Company has proceeded and judgment has been rendered therein against the Railroad Company for $216,000, besides interest, which enures to the sole benefit of R. V. Bowen. It is alleged that the suit just referred to is collusive and void; for while the same is a suit nominally by the Construction Company and others against the Railroad Company, it is really a suit by R. V. Bowen against R. V. Bowen, he being receiver of both companies. The Construction Company has no assets subject to levy and sale, its only assets being its right to compensation in bonds of the Railroad Company under the contract hereinbefore referred to. There has never been any settlement between the two companies, and as long as R. V. Bowen controls both companies and is receiver of both companies no settlement is probable, and the only way in which petitioners can collect their debts is by the appointment of some proper person as receiver. An order of sale was granted in the case against the Railroad Company, but no sale has been made. It is alleged that R. V. Bowen, controlling the Railroad Company, has made a contract for the sale of the railroad to the Georgia & Alabama Railway Company for $75,-000, but the same has not been executed. It is also alleged that as Bowen has control over the litigation hereinbefore referred to, and refuses to pay the debts due plaintiffs, they fear he will bring the litigation to an end in such a way as to defeat their claim. The prayers of the petition were: (1) that a receiver be appointed to take charge of all of the assets of the Construction Company; (2) that the receiver be authorized to file suits, have himself made party to pending suits affecting the assets of the Construction Company, and to take any other needful steps to secure and preserve the assets of the

Construction Company; (3) that R. V. Bowen be required to deliver to the receiver all the books, records, and assets of the Construction Company, including the bonds issued by the Railroad Company and deposited with the Trust Company, except the eleven bonds hereinbefore referred to; (4) that R. V. Bowen be enjoined from disposing of the bonds above referred to, and from collecting or enforcing payment of the same either individually or as receiver; (5) that judgment be rendered against the Construction Company in favor of such of the plaintiffs as have not already obtained judgments; (6) for general relief.

The defendants filed a demurrer containing the following grounds: (1) There is no equity in the petition. (2) The petition shows on its face that the Construction Company is already in the hands of a receiver. (3) No order of court was obtained authorizing suit against the receiver referred to in the petition. (4) When the petition was filed the Construction Company had ceased to do business. (5) The petition does not show that plaintiffs represent one third of the unsecured indebtedness of the Construction Company. (6) There is no averment that the Construction Company is insolvent. (7) There is no averment that R. V. Bowen is insolvent. (8) The claim of James Harp is barred by the statute of limitations. (9) Plaintiffs have an adequate common-law remedy.

After the demurrer was filed the plaintiffs filed an amendment to the petition, alleging, in substance, as follows: Since the commencement of the suit R. V. Bowen has bought and now owns all interests in the litigation referred to in the original petition, which were formerly adverse to him, and there is no one besides himself pecuniarily interested in the result of the cases, both sides of each case being controlled by him. Both of the suits have been finally terminated and the receiver discharged, there being now no receiver for either corporation. No part of the indebtedness due plaintiffs was paid by the receiver before his discharge. R. V. Bowen, although restrained by an order in the case "from disposing of any of the bonds referred to in the petition, and from collecting or enforcing them in any way," has received a sum realized from a sale of the railroad under the suit of the Trust Company, and he has

thereby become possessed of all of the assets of the Construction Company, and there are now no assets of the Construction Company except his liability to it on account of his appropriation to his own use of all the assets of the company, which were more than sufficient to pay all demands which plaintiffs have against the Construction Company. The Construction Company is insolvent, and both this company and Bowen have acted in bad faith, been stubbornly litigious, and caused plaintiffs unnecessary trouble and expense. The prayers were, that plaintiffs have judgments against Bowen for their debts, and judgments against the defendants for reasonable attorneys' fees. This amendment was allowed, and the defendants renewed their demurrer, adding the ground that there are no proper exhibits attached to the amendment, showing the termination of the litigation referred to in the petition. The demurrer was sustained, and the plaintiffs excepted.

It does not appear that any objection was made to the allowance of the amendment to the plaintiffs' petition; the defendant simply demurring to the petition as amended, and urging, as reasons why the case in this condition should be dismissed, the grounds of demurrer which had been filed to the original petition, and one additional ground which related solely to the averments of the amendment. It was contended in the argument here, that the case was properly dismissed upon that ground of demurrer which set up that, as it appeared from the allegations in the petition that the assets of the Construction Company were in the hands of a receiver appointed by the court in which this case was pending, the plaintiffs' petition being one to enforce their equitable rights in these assets, they could not file an independent petition asking for the enforcement of such rights, and that the averment in the amendment, that the case in which the receiver had been appointed had terminated and the receiver discharged, was insufficient because the same was not supported by proper exhibits attached to the petition showing the order, judgment, or decree disposing of the case. It is true that section 4903 of the Civil Code declares that, "Where property has been placed in the hands of a receiver, all persons properly seeking to assert equitable rem-

edies against these assets should become parties to the cause by intervention and prosecute their remedies therein." This section had its origin in the case of *National Bank* v. *Richmond Factory*, 91 *Ga.* 284, and therefore must be construed in the light of that decision. In that case it appeared that a petition in the nature of a bill in equity had been filed against the factory by certain of its creditors, and that a receiver had been appointed to administer the assets of the defendant as an insolvent corporation; the action being one instituted in good faith by persons who were interested in the assets of the corporation, for the purpose of asserting their claim upon the assets of the insolvent corporation, and being a proceeding in which every creditor of the factory was entitled to and could be heard upon their claims against it. There seems to have been no defect whatever in this proceeding, and no reason appeared why any creditor could not be fully protected by being made a party to the proceeding. It was held that in such a case a creditor of the factory could not file an independent petition seeking to enforce purely equitable rights in the assets of the insolvent corporation which were already in the hands of a receiver appointed by the court. In other words, the first case was instituted in good faith for the protection of the rights of the creditors of the defendant company, and there was no suggestion that the suit was collusive or intended to be used to procure a judgment which might be prejudicial to the rights of other creditors. In the present case it is distinctly alleged that at the time the orginal petition was filed the suit against the Construction Company, to which it is claimed that the plaintiffs in this case should make themselves parties, although probably begun in good faith and for a proper purpose, had really become no case whatever, by reason of the fact that pending the same R. V. Bowen, one of the defendants in the present case, who was the receiver appointed, had acquired the entire interests of his coplaintiffs in the suit above referred to, and also all the interests in the case which were adverse to the plaintiffs in that case; and that, being also the receiver appointed in that case, he had such complete control of the litigation in every way that in law the litigation was at an end

and the suit had become a nullity. These allegations make a case materially different from that in the 91 *Ga.*, supra. If they are true, Bowen is the plaintiff, Bowen is the defendant, and Bowen is the receiver. No court would treat any case which was shown to be really in this condition with any consideration whatever; and any one whose rights might be in any way affected by such litigation or any judgment that might be rendered therein will be allowed to show that such are the facts, and that the proceeding, although apparently a case in court, is really nothing, and should be treated as a nullity by any one in whose way it might come. In the case of Lord *v.* Veazie, 8 How. 251, the Supreme Court of the United States held, that where it appears from affidavits and other evidence, filed by persons not parties to a suit, that there is no real dispute between the plaintiff and the defendant in the suit, but on the contrary that their interest is one and the same, and is adverse to the interests of the parties who filed the affidavits, the judgment of the circuit court entered in such a case is a nullity and void, and that no writ of error will lie from it. Mr. Chief Justice Taney in the opinion says: "It is the office of courts of justice to decide the rights of persons and of property, when the persons interested can not adjust them by agreement between themselves,— and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

In Cleveland *v.* Chamberlain, 1 Black's Rep. 419, the rule laid down in Lord *v.* Veazie, supra, was applied "to a case where the appellant becomes the sole party in interest and *dominus litis* on both sides." Mr. Justice Grier in the opinion says: "This appeal must be dismissed. Selah Chamberlain is, in fact, both appellant and appellee. By the intervention of a friend he has purchased the debt demanded by Cleveland in his bill, and now carries on a pretended controversy by counsel, chosen

and paid by himself, and on a record selected by them, for the evident purpose of obtaining a decision injurious to the rights and interests of third parties. There is no material difference between this case and that of Lord v. Veazie (8 How. 254), when the whole proceeding was justly rebuked by the court as 'in contempt of the court and highly reprehensible.'" In Lord v. Veazie the suit originated in collusion. In Cleveland v. Chamberlain, the suit originated in good faith, was prosecuted with vigor and determination, and finally became collusive by the adverse interests becoming vested in one person. In the case of Wood-paper Company v. Heft, 8 Wall. 333, a bill filed to enjoin the defendants from infringing certain patents was dismissed, because it appeared that after the appeal which was taken from the judgment of the court below the appellant had purchased the patents under which the suit was defended, and owned both sides of the litigation, and that the defendants as compensation had taken stock in the company which had sought to enjoin them and was the appellant in the case. It was held that the fact that the damages for the infringement alleged in the bill had not been compromised did not prevent the bill from being dismissed. Mr. Justice. Nelson in the opinion said: "The case, as it now stands, is this: The complainants, having purchased in the patents under which the suit was defended, own both sides of the subject-matter of this litigation; and, further, the owners of the Dixon patents having taken, in consideration for the sale, stock in the complainants' company, their interest has been transferred to the side of the complainants. It is said, notwithstanding all these negotiations, exchanges, and transfers, the *damages* for the alleged infringement in the bill have not been compromised. But, before that question can be reached, as the bill was dismissed below, this court must hear and determine the question on the merits, whether or not the defences set up in the answer are sustained upon the proofs. If the court should determine they were not, then the question of damages would arise; if otherwise, not. Now, upon this question of merits, the complainants own both sides of the litigation, and control them; and in the language of the Chief Justice, in the case of *Lord* v. *Veazie*, 'the plain-

tiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons, whose rights would be seriously affected, if the question of law was decided in the manner that both parties to this suit desire it to be.' And, for this reason, the case should not be heard by this court." In Hoskins v. Lord Berkeley, 4 Term Rep. 402, it was held that where it appeared that the issues which had been tried were feigned and not real, and that leave had not been granted to try such feigned issues, all of the proceedings would be stayed; the court adding that "trying a feigned issue without the consent of the court is a contempt of the court." In the Matter of Elsam, an Attorney, 3 B. & C. 597, it appeared that the case had come on for a hearing, and a doubt was entertained as to whether there was really any controversy between the parties; there being facts from which it might be inferred that the suit was fictitious. The court referred the matter to a master to inquire which of the facts stated in the special case were truly stated. The master reported that the statement as a whole was practically fictitious, there being only two true statements of fact therein. The defendant by affidavit stated his reasons for wishing to obtain the opinion of the court speedily, and that he was not actuated by any corrupt or fraudulent motive, and that he had already incurred an expense of 401l. in the course of the proceeding. Chief Justice Abbott said: "It is impossible to pass over a case of this kind without notice; but as it appears that the party before the court did not intend any fraud, and that he has already incurred an expense of 401l. in the course of these proceedings, the object of the court, which is to prevent the repetition of such a practice in future will be answered by ordering him to pay a fine of 401l., and to be imprisoned until that fine be paid."

It would seem, therefore, if the case had stood upon the averments of the original petition, that the ground of demurrer setting up, in effect, that the plaintiffs in that petition should have asserted their rights through the case already pending against the Construction Company, was not well taken. It appears from the averments in the amendment that that case is no longer pending, and therefore it will not be necessary to

determine in this case what would be the appropriate remedy or procedure to be followed to prevent a case of that character from standing in the way of a proper decree in a case like the present. Whether the court in this case should have enjoined the party alleged to be the owner of the conflicting interests in the alleged case, or whether a receiver should be appointed in this case with directions to make application to the court in the other case for leave to move to dismiss the same and strike it from the file and ask that whatever assets that might be in the hands of the alleged receiver in that case be turned over to him, are questions we will not now decide. Under the view that we have taken of this case it is unnecessary to determine whether it was absolutely essential that the averments in the amendment in reference to the termination of the suit against the Construction Company and the discharge of the receiver appointed in that suit should have been supported by proper exhibits. Exhibits in a case like the present one do not seem to be required by the terms of section 4963 of the Civil Code, which is a part of the uniform procedure act of 1887. That section requires that copies of contracts, obligations to pay, and other writings should be exhibited only when they constitute the cause of action, or the relief prayed for must be based thereon. In *Lyons* v. *Bank*, 86 *Ga.* 485, it was said that it was doubtful whether what is now the third equity rule, that is, the one which requires copies of exhibits to be filed with the petition or answer (Civil Code, § 5694), was applicable in its full force since the act of 1887, establishing uniformity in pleading. Chief Justice Bleckley says, in reference to this matter, that "It may be that, under the new act, there ought to be some degree of conformity to the rule in pleading all material records and documents referred to in the petition. But where a case has had a right result in the court below on the merits, we do not feel called upon to reverse the judgment simply because that court may have been too liberal to one of the parties, in dispensing with the formality of annexing exhibits to the pleadings."

Should the petition have been dismissed upon any other ground? That there was equity in the petition can not admit

of doubt. The plaintiffs were creditors of the Construction Company. The Construction Company had no assets which were subject to levy and sale. They could not secure payment of their debts except through the medium of a court of equity. The suit not being against a receiver, of course that ground of the demurrer that no order of court was granted authorizing the filing of the suit is without merit. It does not appear from the face of the petition that the Construction Company had ceased to do business, and therefore the ground of demurrer which sets up that as a reason for dismissing the petition is not well taken, even if there is any merit in such a point. The petition not being one brought in the nature of a creditors' bill under the statute of this State, the failure to allege that the plaintiffs represented one third of the unsecured debts of the Construction Company is no reason for dismissing the petition. The proceeding being one to enforce the claims of the plaintiffs against the equitable assets of the Construction Company in the hands of Bowen, there being an allegation that these assets could not be reached by the ordinary processes of law, as well as an allegation that that company had no assets that could be so reached, it was not necessary to allege that either Bowen or the Construction Company was insolvent. But even if such averment was necessary as to the Construction Company, it was made in the amendment which was allowed. That ground of demurrer which alleges that the claim of James Harp was barred by the statute of limitations is not well taken, as it appeared from the petition that this claim arose under a contract under seal, and it does not appear that twenty years had elapsed since the alleged breach of the contract. The amount due Harp does not seem to have been alleged in the petition; and had the demurrer raised this point, it would have been well taken. We do not see what common-law remedy would have been adequate to enforce the rights of the plaintiffs in the present case. In any event, whatever rights they may have and whatever remedies they may be entitled to, whether legal or equitable or both, can be ascertained and accorded in the present case. *Ray* v. *Investment Co.*, 106 *Ga.* 492, and cases cited; *Brumby* v. *Harris*, 107 *Ga.* 257.

The facts alleged in this petition and its amendment are voluminous and complicated, and the case is somewhat perplexing; but, after a careful study of the record and making the analysis of the petition and amendment which we have set forth above, we have reached the conclusion that the plaintiffs have a cause of action upon which they are entitled to be heard in this proceeding; and, without indicating at this time what would be the appropriate relief against the Construction Company, or against Bowen individually, we send the case back in order that an answer may be made and issues made up, which, being determined, may be followed by such a decree as the facts then appearing may justify.

*Judgment reversed.　All the Justices concurring.*