## CHATHAM BANK AND TRUST COMPANY, trustee, v.
## OCILLA SOUTHERN RAILROAD COMPANY et al.

1. The petition in this case set forth causes of action.
2. Where a receiver is appointed, on a petition brought by a minority stockholder against an insolvent railroad corporation, to operate the same as a means of preventing the holder of first and second mortgages, both of which are in default, from foreclosing the same and selling the property of the railroad company embraced therein; and where there is evident collusion between the plaintiff stockholder and the company, the institution of such suit and the appointment of a receiver to take charge of and operate the railroad of the defendant company as a common carrier will not prevent the holder of such mortgages from instituting an independent suit to foreclose such mortgages, and having a receiver appointed to take charge of the properties embraced in such mortgages.
   No. 2415. FEBRUARY 23, 1922. REHEARING DENIED MARCH 4, 1922.

Equitable petition. Before Judge Eve. Irwin superior court. December 28, 1920.

Chatham Bank and Trust Company, as trustee, brought its equitable petition in Irwin superior court, to foreclose two mortgages of the Ocilla Southern Railroad Company, one being a first mortgage made to this trustee to secure an issue of first mortgage bonds, and the second being a mortgage to this trustee to secure certain short-term notes. The railroad company was in default under both mortgages, and the trustee's right to foreclose them had fully accrued. Garbutt, a stockholder of the railroad company, had previously brought an equitable petition against this company in the same court; and under it the court appointed said Garbutt, J. A. J. Henderson, and Joseph F. Gray as receivers of all the assets of the defendant railroad company. A number of other stockholders intervened in Garbutt's petition, and were made parties plaintiff with Garbutt.

The defendants in the case at bar are the railroad company, Garbutt, and the other intervening stockholders in his petition, and Henderson and Garbutt as receivers of the railroad; Gray, the other receiver, having previously resigned. The petition of the trustee in this case prayed for the foreclosure of said mortgages; for injunction and receiver; and that the receiver to be appointed therein should make an application in the Garbutt cause for an order for the receivers thereunder to turn over all property and assets of the railroad company in their hands to the receiver to be appointed in this case.

Attached to the petition of the trustee is a copy of the petition and proceeding in the Garbutt case. In his petition Garbutt alleged, that the Ocilla Southern Railroad Company was duly chartered under the laws of Georgia, and was engaged in the operation of lines of railway in this State owned and leased by it; that in addition to its lines of railroad the railroad company owns other valuable property, consisting of rights of way, rails, crossties, depots, rolling-stock, etc.; that the railroad company had conveyed all its properties to secure bonds and similar securities in the sum of approximately $700,000; that the amount of the company's other indebtedness was unknown to the petitioner; that since December 1, 1916, one Gray had held the position of general manager of said company; that while he was exercising the usual and customary powers of a general manager, he was likewise exercising far more power and much more authority than is ordinarily exercised by such a manager, and in fact the railroad company and its properties have been completely in charge of said Gray since the date of his election, the directors of said railroad company having either directly conferred upon him all the powers vested in them or having allowed him to assume and exercise all such powers; that Gray since the date of his election as general manager had confederated with the holders of the securities of the railroad company to operate, manage, and control its properties and conduct its business in such a manner as had been deemed by him and the holders of the securities to be to their interests, rather than to the interests of the stockholders generally, to the end that the interests of the stockholders and the public should suffer; that in pursuance of such conspiracy the franchises and properties of the railroad company have been and are now being mismanaged to the damage of petitioner and other stockholders, having been allowed to deteriorate in value to such an extent that its business is not a paying business; that the railroad company is insolvent; that it is the plan of the security holders, confederating with Gray, to so reduce the value of the physical properties and franchises of the company and its income that its affairs shall be made to appear to be hopelessly involved and the company insolvent, so that said holders may procure foreclosure of their securities and have the property sold by the order of some court in a foreclosure proceeding, and buy said properties for the amount of their securities,

to the damage of its common creditors and the destruction of the rights of said Garbutt and other shareholders in said company; that in pursuance of said scheme the business done by said railroad company has been so reduced that its operating expenses and the interest on its bonds are past due and unpaid, which will render it liable at any time to be put in the hands of a receiver at the instance of bondholders; that in pursuance of such scheme the roadbed and rolling-stock of the company have become dilapidated; that it is the purpose of Gray and the holders of said securities to discontinue the operation of trains on said railroad altogether, and procure a sale of its physical properties as junk; that if the affairs of the company were placed in the hands of competent and honest officials and they were directed to carry on its business, it could again become solvent, so that the stock of shareholders would be of value. On behalf of himself and all other stockholders who may become parties, Garbutt prayed that a receiver be appointed to take charge of all the properties of the railroad company, and be required by order of the court to operate the same as a going railroad company.

By an amendment Garbutt alleged that there were suits pending against the company, ripe for trial, amounting to $214,000; that if a permanent receiver be appointed and the road continued in operation, the company would probably be able to pay the full amount of all said claims; that if any one of said suits be tried and a receiver be applied for by the judgment plaintiff, it would wreck the road; that on July 16, 1917, a valid judgment was obtained in Irwin superior court against the defendant company, by the Seaboard Air-Line Railway Company, for $18,891.05, which has not been paid, and the same is pending on appeal in the Supreme Court; that on affirmance of said judgment the judgment creditor is likely to apply for a receiver, which could not be successfully resisted; that Gray and the bondholders are making no effort to take care of said judgment; and that there are outstanding against said company tax executions amounting to $656.10. None of the creditors of the railroad company were made parties to the Garbutt suit.

The railroad company answered the petition, admitting the material allegations thereof. It alleged that persons holding securities of said company were preparing to file a petition in the

United States district court, asking for the appointment of a receiver to take charge of the properties of the company, with the intention of procuring an order allowing its dismantling. The railroad company joined in the prayer for the appointment of a receiver to take charge of and operate its railroad. On August 3, 1918, the court appointed said Garbutt, J. A. J. Henderson, the president of the company, and J. F. Gray, its manager, permanent receivers of its property, and authorized and directed them to operate the railroad as a common carrier.

The railroad company, the receivers in .the Garbutt cause, and other intervening stockholders in the Garbutt cause filed separate demurrers upon the identical grounds: (1) because there is no equity in the petition; (2) because intervenors in the Garbutt petition, other than intervening stockholders, were not made parties defendant to the petition in this case; (3) because no previous order was obtained authorizing the plaintiff to file suit against the railroad company or against the receivers thereof; and (4) because the property of the railroad company being in the hands of receivers appointed under the Garbutt bill, the trustee in this cause could not file an independent bill to foreclose its mortgages, and have receivers appointed under its bill, but must intervene in the Garbutt suit.

The court sustained all these demurrers and dismissed the plaintiff's petition. This is the error assigned.

*Lawton & Cunningham* and *W. E. Kay,* for plaintiff.

*Quincey & Rice, Wall & Grantham,* and *Walter F. George,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The petition in this case sets up causes of action. About this there can not be even a fanciful doubt; but counsel for the defendants insist, that, as the property of the Ocilla Southern Railroad Company, including that embraced in the plaintiff's mortgages, had been placed in the hands of receivers, the plaintiff can only prosecute these causes of action in the receivership case by intervention, and not by an independent proceeding of foreclosure and for receiver. In reply to this position counsel for the plaintiff contends that the receivership proceedings should be treated as a mere nullity, because there is nothing in that case to support a receivership, there being no controversy between the parties, no justiciable

question involved, and the application for a receiver, by a minority stockholder of the corporation, based on loose and general allegations of mismanagement of its affairs by its general manager in conspiracy with its security holders, being colorable and collusive.

2. The general rule is, that, where property of a corporation has been placed in the hands of a receiver, persons seeking to assert equitable remedies against its assets should become parties to the cause by intervention and prosecute their remedies therein. Civil Code, § 5478; *National Bank of Augusta* v. *Richmond Factory*, 91 *Ga.* 284 (18 S. E. 160); *Empire Lumber Co.* v. *Kiser*, 91 *Ga.* 643 (17 S. E. 972).

To this general rule, as to all general rules, there are exceptions. It is probably impossible to find any general statement of the law so inclusive and exclusive as admit of no exceptions.

In the first place this principle is applicable to creditors' bills and similar suits to wind up the affairs of insolvent corporations and others, and to distribute their assets among creditors, stockholders, and others entitled thereto. *National Bank of Augusta* v. *Richmond Factory*, supra. So proceedings, authorized by statute to forfeit the charter and franchises of an insolvent corporation, to appoint a receiver to take charge of its assets, and to wind up and distribute its assets, are exceptions to the general rule. People v. New York City Ry. Co., 57 Misc. 114 (107 N. Y. Supp. 247); State v. Port Royal & Augusta Ry. Co., 45 S. C. 470 (23 S. E. 383); Herring v. N. Y., L. E. & W. R. Co., 105 N. Y. 340 (12 N. E. 763); In re Kittanning Ins. Co., 146 Pa. 102 (23 Atl. 336); St. Louis Car Co. v. Stillwater Ry. Co., 53 Minn. 129 (54 N. W. 1064); Texas Trunk Ry. Co. v. Texas, 83 Tex. 1 (18 S. W. 199); City Water Co. v. Texas, 88 Tex. 600 (32 S. W. 1033); De La Vergne Ref. Mach. Co. v. Palmetto Brewing Co. (C. C.), 72 Fed. 579; Met. T. Co. v. Lake Cities Elec. Ry. Co. (C. C.), 100 Fed, 879; *Merchants' &c. Bank* v. *Trustees of Masonic Hall*, 63 *Ga.* 549; People v. Hasbrouck, 57 Misc. 130 (107 N. Y. Supp. 257); Hitchcock v. American Pipe &c. Co. (N. J.), 105 Atl. 655; Taber v. Royal Ins. Co., 124 Ala. 681 (26 So. 252).

So there is an exception where one party "becomes the sole party in interest and *dominus litis* on both sides." Cleveland v. Chamberlain, 1 Black, 419 (17 L. ed. 93).

The case at bar is stronger. From the beginning the interests of the plaintiff and the defendant in the receivership proceedings were identical. The proceedings were colorable and collusive, and are an exception to the general rule that parties must intervene in receivership proceedings to enforce liens on the property in the hands of the receiver. Lord *v.* Veazie, 8 How. 251 (12 L. ed. 1067); *Harp* v. *Abbeville Investment &c. Co.*, 108 *Ga.* 168 (33 S. E. 998); *May* v. *Printup*, 59 *Ga.* 128; *Merchants' &c. Bank* v. *Trustees*, 63 *Ga.* 549.

This is especially so, when by collusion the receiver was appointed to head off the plaintiff from proceeding to foreclose its mortgages and obtain a receiver. *Merchants' &c. Bank* v. *Trustees, supra.*

A casual inspection of the record in this case shows the proceedings under which the receiver was appointed were collusive and colorable. The allegations of mismanagement are very loose and general. No application was made to the directors and stockholders of the corporation for redress. Civil Code, § 2224; *Alexander* v. *Searcy*, 81 *Ga.* 536 (8 S. E. 630, 12 Am. St. R. 337). If the general manager of this corporation was mismanaging its affairs, he could have been removed by the directors. Yet no relief was sought at the hands of the directors. The application for a receiver was avowedly made to head off the plaintiff from foreclosing its mortgages, and from obtaining from the court in which the proceedings were instituted such rights as the plaintiff was entitled to. In its answer the company joined in the prayer for a receiver; and the appointment of the receivers was by consent.

An inspection of the minutes of the meeting of the stockholders of this company, at which a resolution was passed endorsing this Garbutt petition for a receivership, will show that these proceedings were collusive and intended to prevent the bondholders having the road put in the hands of a receiver in the United States district court, and possibly securing an order for dismantling it. Mr. Elkins, of counsel for Garbutt, stated to this meeting that probably some of the Garbutt petition for a receiver was camouflage; but its main purpose was as above stated. The general manager was not even made a party to the proceeding.

As the application and appointment of a receiver were colorable and collusive, we think that this constitutes an exception to

the general rule requiring persons who have liens on corporate property in the hands of a receiver to intervene and prosecute the same in the case in which the receiver was appointed.

Furthermore, the receivership in the Garbutt case was for one purpose only, and that was to operate this railroad. The plaintiff seeks a receiver for another and distinct purpose. The receiverships were for separate and distinct purposes.

So we are of the opinion that the plaintiff could file an independent proceeding to foreclose its mortgages, to have a receiver appointed, and to request the court to pass an order to require the present receiver to turn over the property of this railroad to the receiver appointed in this cause.

3. The plaintiff could file this proceeding without first obtaining an order from the court permitting its prosecution. Such order was unnecessary. *Harp* v. *Abbeville Inv. &c. Co.*, supra. If such order was necessary, the sanction of the petition by the court before it was filed was tantamount to the granting of such authority by the court. *Vestel* v. *Tasker*, 123 *Ga.* 213 (51 S. E. 300); *Donehoo* v. *Rogers*, 146 *Ga.* 75 (3), 76 (90 S. E. 382).

*Judgment reversed.· All the Justices concur.*