HENRY MAY *et al.*, plaintiffs in error, *vs.* DANIEL S. PRINTUP, receiver, *et al.*, defendants in error.

1. The circuit court of the United States may pass orders to preserve property in litigation, where the proceeding is against the property, and its preservation is absolutely essential to give relief, by interlocutory orders, after and pending an appeal to the supreme court of the United States.

2. When the state court, on a bill of like character with one pending in the United States court, appoints a receiver inadvertently, and without knowledge of the facts in the federal court, and the circumstances indicate collusion in the state court, this court will not interfere with the judge of the state court in revoking the order appointing his receiver, and turning over the property to the receiver of the United States court.

Equity. Receiver. United States Courts. Before Judge McCUTCHEN. Bartow County. At Chambers. March 15th, 1877.

The judgment excepted to was as follows:

"After looking through the record, I am satisfied that the

object of the bill in the United States court is substantially the same with that of the bill in this case, both making all known creditors of the railroad company, as well as the railroad company itself, parties, and asking that all other creditors, when discovered, be made parties, and praying that the road, and all the property and franchises of the Cherokee Railroad Company, be sold, and their proceeds be distributed, by decree of the court, among the creditors, according to the liens and priorities of the creditors respectively, and both bills praying that the court take charge, by receiver, of all the effects of the company, etc.    The fact that the complainants in the United States court, by their bill, are also setting up that their claim is a first lien, and asking that it be so decreed, does not make the bill any the less a creditors' bill.

"If a party has a prior lien, he is not prevented from setting it up in a creditors' bill filed by him to administer and distribute an insolvent estate ; if so doing had the effect to change the character of the bill, then no person entitled to priority of payment could ever file such bill without waiving his priority.   It is the privilege of every creditor to assert and maintain, in such a bill, all his rights and priorities as against every other creditor, and the doing so in no way changes the character of the suit from that of a creditor's bill.   The very object of such a suit is to marshal the creditors' claims into the order of their priority, and to administer and distribute the proceeds of the property according to the respective priorities of the creditors, as ascertained and fixed by the decree.   In the nature of the case, there cannot be but one suit which shall effectually marshal, administer and distribute an insolvent estate.   The possession and control of the whole estate, and a full view of the rights of all the creditors, being essential to a proper and full administration and distribution.   The pendency, therefore, of one such suit, in a court of competent jurisdiction, might well be pleaded in abatement of a subsequent suit for the same purpose.   As between courts of competent jurisdiction, the commencement of the suit, and service of process on

defendants, gives the jurisdiction over the property of the insolvent, for the purposes for which the bill is filed, and when a court has thus once gained jurisdiction over the subject matter, no other court of concurrent jurisdiction can legally divest that jurisdiction by the seizure of the property under a bill subsequently filed, having the same objects with the first bill. It is true, that if this were done, the former court would have no right to take the property from the actual possession of the latter, however wrong the latter's possession might be, because to maintain such a doctrine would be to say that the laws of this country authorized internecine warfare between courts of concurrent jurisdiction, in the execution of their respective processes. It is not the seizure of the property by the receiver that gives the court jurisdiction over it, but the commencement and service of the bill and process. The object of the seizure of the property is not to give jurisdiction, but only to enable the court to administer effectual and full justice under the jurisdiction it has acquired by virtue of the suit commenced. The contrary view would encourage collusion between parties, and unseemly haste in the seizure of property by receivers. The case at bar affords a striking illustration of the propriety of the rule that the commencement of the suit, and not the appointment of the receiver, or seizure of the property, gives jurisdiction over the subject matter.

" The suit in the United States court had been pending for years, and an injunction had been granted, and a receiver appointed, long before the suit in this court had been commenced. It is true that the order appointing a receiver in the United States court had been rescinded, under an order passed, upon consent of parties, for a special purpose named in the order; but nothing can be plainer than that there was no intention by the court to release its authority over the property; on the contrary, the consent order expressly provides that the state of the case and rights of the parties shall remain unchanged, and as they were before the order of rescission was passed, without prejudice to any party to the

litigation. In September, 1876, an injunction was granted in the United States court, restraining any sale or disposition of the property of the railroad company, and a motion was made for the appointment of a receiver, and served. This motion was set for a hearing on the 20th of October. Pending this motion for a receiver in the United States court, on the 4th of October, 1876, the bill in this case was filed praying a receiver. The chancellor granted a rule *nisi*, fixing the 23d of October for the hearing of this motion for a receiver. The attorney who filed for complainants the bill in this court, and several of the complainants themselves, are parties defendant in the case in the United States court. The time set for the hearing of the motion for receiver in this court, was three days later than the time set for hearing the motion in the United States court. Counsel for complainants and defendants in the case in the state court, agreed that the motion in this case should be heard and decided on the 10th of October, in advance of the time originally fixed by the chancellor. In pursuance of this agreement, the motion was heard, and a receiver appointed. No defense, or resistance of any sort, was made to the appointment of the receiver. The fact of the pendency of the proceedings in the United States court was not brought to the notice of the chancellor. If all the facts had been brought before him, he presumably would not, and certainly ought not to, have appointed the receiver.

"It is, therefore, ordered and adjudged that the order of this court appointing a receiver in the said equity cause, in Bartow superior court, be, and the same is hereby, rescinded. This order of rescission to take effect on the following conditions: that the receiver, Samuel F. Stephens, shall be first reimbursed the amount of money which he has had to advance out of his own funds, to prevent the property in his hands from being sold to satisfy tax *fi. fas.* against said railroad company. Whenever he shall have been fully so reimbursed, either out of the earnings of the road, or by the said Daniel S. Printup, then he, the said Stephens, shall cease to hold said property as receiver, and shall deliver the same

to the said Printup, the receiver appointed by the circuit court of the United States aforesaid, or allow the said Printup, as receiver, to seize and take possession of the same, provided that the said Stephens shall, in no event, deliver over the said property, or relinquish the possession thereof as such receiver, until the expiration of twenty days from this date, so that the possession of the property shall not be changed until the complainants shall have the time allowed by law to file a bill of exceptions, and to give bond as required by statute, to supersede this judgment until the case can be heard in the supreme court."

For the remaining facts, see the opinion.

A. Johnson; Stansell & Wofford, for plaintiffs in error.

A. T. Akerman; W. T. Wofford, for defendants.

Jacson, Judge.

In 1872 Henry Clews & Co. filed a bill in the circuit court of the United States against John W. Wofford and others, alleging that complainants were creditors of the Cherokee Railroad Company to a very large amount, and held its bonds therefor; that the proceeds of their credit to the said company, in fact, built the road and bought the iron rails therefor; that there were other creditors of the road for various sums who were made defendants, and some who were unknown, but might be made parties when discovered; that the road had been illegally and fraudulently sold under judgments wrongfully obtained by some of these creditors; and it prayed that the sale be set aside; that injunction be granted against the possession and control of the road under such illegal sale by Wofford and others; that a receiver be appointed; that the road be sold; that the illegal sale be set aside, and its proceeds be applied to the payment of all its debts according to the priorities thereof, and that the assets be marshaled for that purpose.

This bill was amended afterwards by a prayer to the effect that the Cherokee Railroad Company be made a party, and that the company be decreed to pay complainants' debt, and that the earnings be applied thereto, claiming that complainants held a first lien thereon.

The injunction was granted, and a receiver appointed.

Subsequently a consent order was had, revoking the appointment, and turning over the road to the management of its own officers, but without having the effect to change at all the status or rights of the several parties, as the order of revocation of the receiver, taken by consent, expressly provided.

A reference to an auditor was afterwards made—exceptions to his report were heard and overruled—and a decree had in favor of Clews & Co., for a large amount. The case was then taken to the supreme court of the United States; and pending its consideration, or the preparation to consider it there, to-wit, in September, 1876, a bill was filed by May and others—some parties to the Clew's bill, and others not —in the superior court in the county of Bartow, as creditors of the railroad company, praying for a marshaling of assets, and a sale of the road to pay their debts, and the appointment of a receiver to take charge thereof.

On the 2d of October, 1876, the chancellor, Hon. C. D. McCutchen, passed an order for a hearing of the application on the 23d of October, 1876—afterwards by consent of counsel for both sides, the hearing for the appointment of a receiver was set for the 10th of October, only six days after the order of the chancellor, which order was to have been served ten days before the contemplated hearing, and at the hearing on the 10th the receiver, Samuel F. Stephens, was appointed by the chancellor in the state court.

Meanwhile, in September, 1876, pending the appeal to the supreme court of the United States, application for a receiver was made by Henry Clews & Co., or rather their assignee in bankruptcy, J. Nelson Tappan, and the 20th of October was appointed to hear that application, and an or-

der was passed that all proceedings be stayed, and the road remain in *statu quo* until the hearing on the 20th.

On the 20th of October, D. S. Printup was appointed receiver by the United States circuit court, and when he went to possess himself of the road, he found Stephens in possession under the state court. Printup reported this fact to the United States court, and the judge of that court passed an order that he apply to the state court for relief, by asking that court to revoke its appointment of Stephens, and to direct that the road be turned over to Printup.

Printup accordingly made application to the state court, and that court, on full consideration of all the facts, passed an order revoking Stephen's appointment, and turning over the road to Printup. Whereupon Henry May *et. al.* excepted, and bring this judgment revoking Stephen's appointment, and complying with the application of Printup by turning the road over to him, for review here.

Two legal questions are made on the above facts. First, can the circuit court of the United States pass an order for the appointment of a receiver to protect the property in litigation in a suit like this, while the case is pending on appeal in the supreme court of the United States? And, secondly, did the United States circuit court have such jurisdiction over this property, by the suit brought there, as to forbid that, by comity, the state court should interfere with the property, and put its receiver over it?

1. In respect to the first question, it appears to us plain that either the supreme court of the United States, or its circuit court, must have the power to preserve the fund— the property in litigation—and to prevent its waste and destruction.

It seems to us that it would be very inconvenient—almost impracticable—for the supreme court to pass such interlocutory orders as the appointment of receivers, the grant of injunctions, and the like orders, to preserve the property; and that unless the power remained in the court below, it would be nowhere for all practical purposes. We

are aware of no instance in which such powers have been exercised by that appellate tribunal, and we have been cited to none.

The circuit court granted the order in this case and exercised the jurisdiction, and that with full knowledge of the fact that the case had gone to the supreme court, and in what manner it went there, and what its own practice was in such cases. We should be loth to deny its jurisdiction in such a case, to preserve the property still pending in some one of the United States courts, and ultimately to be sold, and the fund distributed, by the direction of the supreme court, it is true, but through the machinery of the circuit court at last.

Accordingly, we find that the circuit court has, in cases somewhat analogous, preserved the property by its owners, after appeal to the supreme court of the United States. See High on Receivers, §41; 12 Wall., 86; 6 Wheaton, 519 4 Otto., 672; 10 Wall., 273.

2. The second question is, did the court of the United States, by the bill filed in 1872—the appointment of a receiver under it—the revocation of that appointment, and the turning over the property to the Cherokee Railroad Company itself, but with the proviso that everything should remain in *statu quo*, in respect to the rights of all parties, the application for another receiver in September, 1876, before this bill in the state court was filed and a receiver under it asked for, on which application an order was passed enjoining the railroad company from changing the status of things until that application was acted upon—did the circuit court have such jurisdiction and possession as to make it improper for the state court to seize the road and put its receiver in charge? We think that it did.

There is some difference of opinion on the question whether the mere filing a bill seeking to subject property like this in case of insolvency, and where the only recovery can be out of the property, gives such jurisdiction and control of the *res*, as to prevent another court from appointing

a receiver, but the better opinion, we think, is that it does. See High on Receivers, p. 38, §50 *et seq.*, and cases there cited—also p. 105, §152.

It is true that in 2nd Woods' Circuit Court Reports, 409, Mr. Justice Bradley, Judge Erskine concurring, overruled a decision of Judge Woods, holding the other way on the naked question, but he says in that case, that in case of collusion, the state court would correct its own proceeding. The facts here make a case of collusion apparently. The case was set for hearing in the state court, on the application of receiver, after it was set for hearing in the United States court, but by arrangement of counsel, it was altered and brought on first. The counsel for defendants, too, there in the state court, was a party in the federal court, against Clews & Co. It seems, too, that the order required ten days' notice to that counsel, and that the hearing was had in six days after the bill was filed. Moreover, it appears that Judge McCutchen knew nothing of the state of things in the federal court, and if he had known the facts, that he would not have appointed the receiver. See his opinion in the report of this case.

We think that in this case the federal Judge—Judge Erskine—pursued the very course suggested by Mr. Justice Bradley in case of collusion, and that the state judge did right in revoking the order. Both courts acted in a spirit of comity, to be commended and approved by all who would avoid unpleasant conflicts between the state and federal authorities.

Judgment affirmed.