## YOUNG, receiver, *v.* HAMILTON.

1. The statute which requires the sanction by the judge of the superior court of an equitable petition praying extraordinary relief before its filing in the clerk's office confers upon the judge an inchoate jurisdiction to preserve the status in emergent cases by the grant of a restraining order or the appointment of a temporary receiver, which jurisdiction thereafter becomes complete upon the filing of the petition in the clerk's office, followed by service.

2. A mortgage to a trustee to secure bonds issued by the mortgagor provided that the exclusive right to institute foreclosure proceedings shall vest in the trustee except upon his refusal to act on demand of a bondholder, in which event the latter, upon compliance with certain terms therein expressed, may institute foreclosure proceedings in behalf of the bondholders. A bondholder in behalf of himself and other bondholders, brought a foreclosure suit in a superior court of this State, alleging his right to maintain such suit agreeably to the terms of the mortgage, and the court appointed a receiver in aid of the foreclosure suit. Subsequently the trustee instituted a foreclosure suit in the United States court, wherein a receiver was appointed, with direction to apply to the State court for a vacation of the appointment of the receiver and the surrender of the possession of the property to the United States court receiver. The Federal court receiver applied by collateral motion to the State court for the vacation of the appointment of the State court receiver and the transfer of the possession of the property to the applicant, on the ground that though the petition in the State court showed jurisdiction in that court, yet its allegations were untrue. On the hearing of a rule against the plaintiff to show cause, the superior court refused the application. *Held*, that inasmuch as the petition in the State court disclosed exclusive jurisdiction in that court, and its allegations presented a case entitling the plaintiff to the relief sought, the receiver in the subsequent suit instituted in the United States court can not proceed by a collateral motion, based solely on a traverse of the allegations in the petition, for a summary vacation of the appointment of the State court receiver, and a surrender of the possession of the property to the movant.

3. Where upon an application by a receiver of the United States court to a State court, for the vacation of the appointment of a receiver in the State court, and for the transfer of the possession of the property from the State court receiver to the applicant, the State court renders judgment, and a bill of exceptions to such judgment is sued out, such bill of exceptions will be classified as a "fast writ" under the Civil Code, § 5540.

NOVEMBER 16, 1910.

Motion to vacate receivership, etc. Before Judge Edwards. Polk superior court. May 17, 1910.

The Etna Steel & Iron Company is a domestic corporation, having its principal place of business in the county of Polk in this State. On January 1, 1907, the company executed to the Empire

Trust Company of New York, as trustee, a mortgage or deed of trust to secure the issue of $600,000 of bonds. The bonds were of the denomination of $1,000 each, bearing interest at 5 per cent., payable semi-annually on the 1st days of January and July, and due at 20 years. It was covenanted in the deed of trust, that the Ætna Company would promptly pay the bonds and interest coupons as they severally matured; that it would pay all taxes assessed against the property, and keep property liable to be destroyed by fire insured in some insurance company of good standing; that in case of default in any of the conditions or covenants of the trust deed, or in the payment of the principal of any bond at maturity, or any of the interest coupons attached when due, if such default should continue for the space of one year, the trustee might sell the property embraced in the trust deed, after giving notice, and divide the net proceeds ratably among the outstanding bondholders; that upon the happening of any of the defaults above mentioned the trustee would have the right to proceed by bill in equity or other proper proceeding, in any court of competent jurisdiction, to foreclose the mortgage or trust deed, provided that no foreclosure proceeding should be commenced, by reason of non-payment of interest of any of the bonds, until one year after default in the payment of interest. The trust deed also contained the following provisions: "The trustee shall be under no obligation or duty to perform any act hereunder, or to defend any suit in respect hereof, except upon the request of the company or the holders of a majority in value of the bonds outstanding hereunder, and unless fully indemnified to its satisfaction; and the trustee shall not be bound to recognize any person as a bondholder unless and until his bonds are submitted to the trustee for inspection, if required, and his title thereto satisfactorily established if disputed. . . The exclusive right of action hereunder shall be vested in the trustee until the refusal on its part so to act, and no bondholder or bondholders shall be entitled to enforce performance of these presents until after demand made upon the trustee, accompanied by tender or indemnity satisfactory to the trustee as aforesaid, and the refusal of the trustee to act in accordance with such demand as hereinafter provided."

On February 28, 1910, Harper Hamilton, alleging himself to be a bondholder, presented an equitable petition to the judge of the

superior court of Polk county, praying for the foreclosure of the mortgage, and the appointment of a receiver in aid thereof. In his petition he alleged, that he was the owner of thirty-three (33) bonds; that the Etna Company had defaulted in the interest due January 1, 1909, July 1, 1909, and January 1, 1910; that the company had also failed to keep the property insured, and failed to pay the taxes; that the company had neglected the operation of the property, and the machinery thereon for mining was deteriorating; that the company by operating the property could find a market for its products at fair remuneration; that it could be operated by an officer of the court without loss, and would produce rents, issues, and profits which could be applied to the payment of the bonds; that to continue the property idle would be to permit the fixed charges to accumulate, and other expenses to pile up an indebtedness to the injury of the bondholders; that the company owed no debts except the bonds and $100,000 secured by a prior mortgage; that it had no fund in its treasury; that it had failed to pay the taxes due on the property to the State and to the county of Polk for the years 1908 and 1909, and executions had issued for the taxes for these years, and had been levied upon a part of the mortgaged property, and the same was advertised for sale on the first Tuesday in March, 1910, and the property levied upon would be sold unless the taxes were sooner paid; that the petitioner in writing had called the attention of the trustee to these defaults in the payment of interest and of taxes, and to the fact that the default in the payment of interest had continued for more than one year, and also that default had been made in keeping up the insurance; that he had demanded of the trustee that it proceed to foreclose the trust deed according to its terms, for the protection of the bondholders, and had offered to furnish to the trustee such indemnity as it might require under the terms of the trust deed; that he especially called the attention of the trustee to the threatened sale of a portion of the mortgaged property for taxes, and demanded that the trustee take proper legal proceedings to foreclose the trust deed and have a receiver appointed in time to prevent the sale of the property for taxes, but the trustee had refused to take such proceedings; and that he filed this petition in behalf of himself and the other bondholders whose bonds are secured by the trust deed. The prayers of the petition were: that the petitioner be decreed to be a bond-

holder and entitled to all the benefits and protection of the tru.t deed; that like relief be decreed in respect to any and all holders of bonds of the same series with petitioner; that the deed of trust or mortgage be foreclosed for the benefit of the bondholders; that an accounting be had to ascertain the amount of the bonded debt outstanding; that a receiver be appointed to take charge of the property, and be authorized to insure such parts thereof as can be insured, and that an injunction be granted against the defendant from interfering with the possession of the receiver; that a receiver be appointed pending the hearing of this application, to take charge of the property, and that he be empowered to borrow money, with which to pay the taxes and prevent the sale of the property, under such terms as the court may provide; and for general relief. On the day the petition was presented the court passed an order requiring the Etna Steel & Iron Company to show cause, on March 18, 1910, why a receiver should not be appointed and injunction granted as prayed. In the meantime it was ordered that a temporary receiver be appointed, with direction to take possession of the property, and be empowered to borrow sufficient money to discharge the tax fi. fas. which were proceeding against the property. The petition was filed in the clerk's office on the next day. Subsequently the Empire Trust Company filed its bill in the circuit court of the United States for the northern district of Georgia, northwestern division, to foreclose the mortgage or deed of trust, and for the appointment of a receiver in aid thereof. In the bill of foreclosure it was alleged that the Etna Steel and Iron Company had defaulted, in observing its covenants, in the same respects as was alleged in the petition of Hamilton filed in the superior court. Service of the petition was acknowledged by the Etna Steel & Iron Company, which confessed the defaults set out in the bill, admitted the other material allegations of fact therein contained, submitted itself to the jurisdiction of the court, and consented to the appointment of a receiver as prayed for in the bill, in so far as its consent was necessary or proper. Whereupon, on April 5, 1910, his honor William T. Newman, U. S. judge, ordered and decreed that A. E. Young be appointed as receiver to take possession of all of the property of the Etna Steel & Iron Company embraced within the mortgage or trust deed attached to the bill, and the defendant was directed to surrender possession of the

property to the receiver. The receiver was directed to ascertain the amount of delinquent taxes and report the same to the court. This order made subject to the following condition: counsel for the complainant, at the time of presenting the application for the appointment of a receiver, having represented to the court that the superior court of Polk county, Georgia, had theretofore appointed a temporary receiver to take charge of and hold the properties and assets forming the subject-matter of this suit, upon a petition filed in that court by Harper Hamilton, who alleged himself to be the holder and owner of 33 of the bonds secured by the trust mortgage; and also submitted to the court a copy of the petition, with the order of the court, and copies of the correspondence between Harper Hamilton and the Empire Trust Company and between their respective counsel; and the complainant, without questioning the propriety of the order of the superior court of Polk county under the allegations and the facts and circumstances as they then appeared, contending, from an inspection of the said correspondence, that Harper Hamilton had not complied with the conditions imposed in the trust deed as precedent to the right of any bondholder to institute suit for the foreclosure of the mortgage; and the United States court recognizing the propriety of the judge of the court whose officer is in possession of the property to determine the right and legality of such possession, it was ordered that the receiver of the United States court make application to the judge of the superior court of Polk county, Georgia, to vacate his order appointing a temporary receiver and direct his receiver to turn over and deliver possession to the receiver of the United States court all of the property of the Etna Steel & Iron Company in his possession, power, or control. Pursuant to the terms of his order of appointment A. E. Young, receiver, filed a petition to the superior court of Polk county, setting forth the foreclosure proceedings in the United States court, wherein he was appointed receiver, the order of his appointment, and the pendency of the equitable petition of Harper Hamilton in the superior court of Polk county, alleging that notwithstanding the allegations of the petition of Harper Hamilton, praying to foreclose the mortgage against the Etna Steel & Iron Company as a bondholder, no right of action existed in Harper Hamilton as such bondholder to institute suit for the foreclosure of the trust mortgage, for that Hamilton had not

complied with the requirements of the trust deed, in that he had not tendered to the Empire Trust Company, as trustee, indemnity satisfactory to it, and had not submitted to it his bonds for inspection as provided in the trust mortgage, and that said trustee had not refused to institute judicial proceedings in some court of competent jurisdiction for the foreclosure of the mortgage for the protection of the beneficiaries thereunder. He set out the clause of the trust deed upon this subject, heretofore appearing. He also alleged that at the time of the order appointing a temporary receiver upon the application of Hamilton there was no suit pending in the superior court between the parties upon which to predicate any order or action of the court. Whereupon petitioner prayed a vacation of the order appointing a temporary receiver of the property and assets of the Etna Steel & Iron Company, and that the temporary receiver turn over and deliver to the receiver of the circuit court of the United States for the Northern district of Georgia all of the property and assets in his power, possession, or control. His honor Judge Edwards, of the superior court, granted a rule nisi requiring Harper Hamilton to show cause, on April 27, 1910, why the prayers of the petition of A. E. Young, receiver, should not be granted. Hamilton filed his answer, wherein he showed cause against the granting of the application of the receiver of the United States court. The case was continued until May 2, 1910, when the court, after hearing evidence, passed an order denying the application of the receiver of the United States court: and it is to this judgment the writ of error issued.

*Mundy & Mundy* and *Wimbish & Ellis,* for plaintiff.

*King & Spalding* and *Bunn & Bunn,* for defendant.

EVANS, P. J.   (After stating the foregoing facts.)

1.   One of the grounds urged by the Federal court receiver for the transfer to him of the property of the Etna Steel & Iron Company from the possession of the State court receiver is that the order of appointment of the latter is void, because it was granted before the petition was filed in the clerk's office, and that the appointment of the receiver was therefore coram non judice. In England a receiver could only be appointed after the bill had been filed, except in some special cases, as in the protection of the interests of lunatics and infants, when the court would interfere as a general guardian of that class of persons. *Stone* v. *Wetmore,* 42 *Ga.* 603.

Under the English practice no sanction of a bill invoking the extraordinary powers of a court of equity was required as preliminary to the filing of the bill. The practice in Georgia does not now, and never did, conform to the English chancery practice. By the 53d section of the judiciary act of 1799, all bills in equity were required to be read and sanctioned by one of the judges, and a copy thereof served on the opposite party at least 30 days before the filing of such bill in court. By the act of 1827 so much of that provision as required judges to read and sanction bills in equity, other than applications for injunction, ne exeat, and quia timet, before filing them in court, was repealed. So that now only bills praying extraordinary relief require the sanction of the judge before they can be filed in court. Though an injunction can not be granted by the court in advance of the filing of the petition, yet the judge may, at the time that he sanctions the filing of the bill, grant instanter a restraining order against the party complained of, until the hearing or further order of the court; and this restraining order has the force of an injunction until rescinded or modified. *Strickland v. Griffin,* 70 *Ga.* 551. The requirement that the judge shall sanction a bill praying interlocutory extraordinary relief implies that he may, in emergent cases, preserve the status. This is usually done by the grant of a restraining order; and such has been the uniform practice. If, in addition to the grant of a restraining order, it becomes necessary for the preservation of the status that a temporary receiver be appointed, the same considerations for the protection of the property which justify the grant of a restraining order will also justify the appointment of a temporary receiver until the interlocutory hearing fixed in the order sanctioning the filing of the petition. A case may be easily surmised where the appointment of a temporary receiver is just as emergent and necessary for the protection of the property as the grant of a temporary restraining order. This course is clearly comprehended in the Civil Code, § 4967, which declares, that, if any extraordinary process or remedy is prayed, the sanction of the judge of the court must be first obtained before such process is issued or such remedy granted, and that the application may be ex parte and granted without a hearing in cases of manifest necessity. It is true that the statute (Civil Code, § 4975) provides that the clerk shall endorse upon every petition the date of its filing in office, which shall be considered the time of

the commencement of the suit; and that no petition shall require the sanction of the judge before its filing, unless it prays some extraordinary remedy. This section does not modify the other provisions of the code relative to the sanction of petitions praying extraordinary interlocutory relief. The court, in sanctioning the bill, acquires at least such inchoate jurisdiction over the petition and the res as to preserve the status, where the sworn petition or supplementary proof makes it manifest that the rights of the parties will be seriously impaired unless the status is preserved. A party may not present a petition to a judge, praying the grant of an interlocutory restraining order and the appointment of a temporary receiver, and procure an ex parte order to this effect, with direction that the application be filed, and then withhold it from the records. As soon as the judge favorably acts upon such petition and sanctions it, it then becomes a proceeding in court, at least to the extent that he has power to see that his order is carried out in respect to the prompt filing and service of the same. So far as the suit may affect third parties, under the doctrine of lis pendens, whose rights have been acquired intermediate the sanction and the actual filing, the commencement of the suit is from the filing of the petition with the clerk, where it has been followed by service; yet, as between the parties, the judge has such jurisdiction over the whole res when the bill is presented to him for sanction that he may by proper order preserve the status in emergent cases in advance of the filing; and when the bill thus sanctioned has been filed, the jurisdiction of the court, which was inchoate upon the sanction of the petition, becomes perfect upon the filing, followed by service. The appointment of the receiver in this case was not a proceeding coram non judice.

2. Courts of co-ordinate jurisdiction may entertain the same cause of action between the same parties, concurrently, where a judgment is sought in personam. Some cases are conceivable where both suits may proceed to judgment and execution be had therein, or the judgment first obtained may be pleaded in abatement of the pending suit. The rule, however, is different where the cause of action in both suits is a proceeding in rem. In such cases the doctrine is well settled that where a court in the progress of a suit properly pending before it takes possession of the property by the appointment of a receiver, its jurisdiction over the property for the

time being becomes exclusive, and no other court can lawfully inter-
fere with the possession so acquired.  Wabash Railroad v. Adelbert
College, 208 U. S. 54 (28 Sup. Ct. 182, 52 L. ed. 379).  This re-
sult "is merely an application of the familiar and necessary rule, so
often applied, which governs the relations of courts of concurrent
jurisdiction, where, as in the case here, it concerns those of a State
and of the United States, constituted by the authority of distinct
governments, though exercising jurisdiction over the same terri-
tory.  The rule has no reference to the supremacy of one tribunal
over the other, nor to the superiority in rank of the respective
claims, in behalf of which the conflicting jurisdictions are invoked.
It simply requires, as a matter of necessity, and therefore of com-
ity, that when the object of the action requires the control and
dominion of the property involved in the litigation, that court
which first acquires possession, or that dominion which is equivalent,
draws to itself the exclusive right to dispose of it, for the purposes
of its jurisdiction."  Heidritter v. Elizabeth Oil-Cloth Company,
112 U. S. 294-305 (5 Sup. Ct. 135, 28 L. ed. 729); Merritt v.
American Steel Barge Company, 79 Fed. 228 (24 C. C. A. 530).
Covell v. Heyman, 111 U. S. 176-182 (4 Sup. Ct. 355, 28 L. ed.
390).  In the last-cited authority it was said by Mr. Justice Mat-
thews, in the course of his opinion, that: "They [the State and
the United States courts] exercise jurisdiction, it is true, within
the same territory, but not in the same plane; and when one takes
into its possession a specific thing, that res is as much withdrawn
from the judicial power of the other as if it had been carried
physically into a different territorial sovereignty."  Where a cause
in rem is depending into two courts of co-ordinate jurisdiction, and
the property is in the possession of one, a spirit of comity has
developed the practice that the court claiming the right of pos-
session over the res may authorize its proper officer to petition the
court which has possession to turn over to its officer the property,
the possession of which it claims is necessary for the full asser-
tion of its jurisdiction and the grant of the relief prayed.  When
the officer of the court seeking the possession of the property files
such petition, the court in possession of the property looks to its
pleadings in order to determine its jurisdiction; and if such juris-
diction appears upon the face of the pleadings, it will not in an
independent proceeding collaterally and summarily try the truth of

the allegations of the petition to determine its own jurisdiction. The jurisdiction of a court to entertain a cause, and the right of the plaintiff in such cause to finally prevail, present essentially different questions;—the former is determined from an inspection of the record, the other results from a consideration of the facts as established by the proof. In the case at bar the bondholder is given the right to foreclose the mortgage or deed of trust, upon the refusal of the trustee to act under certain conditions. The petition alleges that the trustee refused to act, and by the terms of the trust deed the bondholder, in behalf of himself and others, became vested with the same right that the trustee had to foreclose the mortgage. In an answer to the petition filed in the Federal court the mortgaging corporation admits the right of the trustee to institute foreclosure suit. Thus, we have the case of where two plaintiffs are contending in co-ordinate jurisdictions for the right to foreclose the same mortgage, and, in aid of such right, to take physical possession of the mortgaged property pending the foreclosure suit. No question is presented by the United States court receiver as to the jurisdiction of the State court upon the pleadings before it; his contention being that the complaining bondholder had misrepresented the facts in his petition upon which the court secured its right to the jurisdiction; and the question thus made is whether the receiver of a co-ordinate court, by summary motion, can oust the possession of the receiver of the court first taking jurisdiction upon a traverse of the facts alleged. The objection to the court's proceeding to determine disputed questions of fact in a collateral motion instituted by the receiver of a court of co-ordinate jurisdiction is based upon the fundamental principle that only parties to a cause will be allowed to contest the truth of an allegation made in the pleadings. On the other hand, the argument is advanced, that, unless the receiver of the United States court be allowed to present and press his motion, it would permit a party to obtain jurisdiction of the res by false allegation; that only one person was entitled to foreclose the mortgage, and that was the trustee; that he had the right to select the forum of the suit; and that unless he be permitted to show that the allegations of the plaintiffs were untrue, the effect would be to deprive the court entitled to exclusive jurisdiction of its dominion over the suit. If two proceedings over the same res, against the same defendant, both being instituted by par-

ties under the same right to the cause of action, are depending in the same court, upon such being brought to the notice of the court, the court may consolidate the two causes or discharge one of its receivers, according to the exigencies of the case. *National Bank of Augusta* v. *Richmond Factory*, 91 *Ga.* 284 (18 S. E. 160). But where the proceedings are in different courts, and the court which has first seized the property has no power of consolidation, it will look to its own pleadings to ascertain its jurisdiction of the res. A receiver of the United States court has no right by virtue of a collateral motion to contest before the State court the truth of the allegations in the petition, unless he intervenes in the cause. The trustee by becoming a party in the State court would be accorded the privilege of asserting its right, either in the continuance of the suit as dominus litis, or in abatement of the suit on the ground that the plaintiff had not performed the conditions precedent to the bringing the suit in his own name. If it chose the latter course and prevailed, then it could institute in the Federal court its suit to foreclose the mortgage; or the trustee might file in the State court an independent petition to enjoin the stockholders' suit, on account of fraud. A diligent search has failed to discover any precedent for allowing a receiver in a co-ordinate court to contest by a collateral and summary motion the jurisdiction of the court of concurrent jurisdiction, based upon a traverse of the allegations of the petition conferring jurisdiction. We do not think such a course is permissible. Our case of *May* v. *Printup*, 59 *Ga.* 128, is not to the contrary. In that case the suit was originally instituted in the circuit court of the United States, and was against the property; subsequently a bill of like character was filed in the State court, and a receiver was appointed. Pending an appeal to the Supreme Court of the United States a receiver was appointed by the circuit court, and he made application to the State court, praying a revocation of the appointment of the State court receiver and the transfer of the property in his possession. The court granted the application upon the ground that the priority of proceeding in the Federal court invested it with exclusive jurisdiction over the res, and gave that court priority over the subsequent suit in the State court.

The rule, that, as between Federal and State courts of concurrent jurisdiction, the court first acquiring dominion over the res

will retain it to the end of the controversy does not apply when the Federal courts exercise superior jurisdiction for the purpose of enforcing the supremacy of the constitution and laws of the United States.  1 Foster's Fed. Prac. 9g.  If a court of bankruptcy, under the constitution of the United States and laws passed in pursuance thereof, is entitled to the possession of the property, through its receiver, the State court will not decline to surrender such possession, but will yield possession of the property to the bankrupt court.  *White* v. *Davis,* 134 *Ga.* 274 (67 S. E. 716); *McGahee* v. *Cruickshank,* 133 *Ga.* 649 (66 S. E. 776).  In such cases the receiver of the United States court applying for the possession of the property does not undertake to contest the jurisdiction of the State court because the receiver was improvidently granted, or that the allegations upon which the court acted were not true in point of fact, but because of the extrinsic fact of bankruptcy, which gives the United States court exclusive jurisdiction of the property of the bankrupt, after adjudication in proper cases.

We therefore hold, that, as the petition in the State court disclosed jurisdiction in that court, and its allegations presented a case entitling the plaintiff to the relief sought, the receiver in the subsequent suit instituted in the circuit court of the United States can not proceed by a collateral motion, based solely on a traverse of the allegations in the petition, for a summary vacation of the appointment of the State court receiver and a surrender of the possession of the property to the movant.

3.  A motion was made by the plaintiff in error to docket the case as a fast writ.  This motion was allowed.  The Civil Code, § 5540, classifies as fast writs all writs of error from judgments "in all cases where an application for an injunction or receiver is granted or refused; in all applications for discharge in bail trover and contempt cases; granting or refusing application for alimony, mandamus, or other extraordinary remedy; the granting or refusing an application for attachment against fraudulent debtors; and in all criminal cases."  We think this application may properly and wisely be included in the classification "granting or refusing application for  .  .  other extraordinary remedy."  In a contest between two courts of concurrent jurisdiction over the possession of the property, it is essential to the orderly administration

of justice and to prevent unseemly conflicts that the two courts bear to one another a spirit of comity; and when one court through its officer, in that spirit of comity, asks of the court of co-ordinate jurisdiction a surrender of the possession of property in its custody, such proceeding should be regarded as an extraordinary remedy. Certainly it is out of the ordinary. And when we consider the importance of preserving that spirit of comity manifested in the friendly overture to adjust the conflict of jurisdiction, we are all the more convinced that the writ of error to the judgment as to the jurisdiction rendered in such proceeding should be speedily heard, and the question of jurisdiction as to the possession of the property in controversy should be promptly settled by the reviewing court.      *Judgment affirmed. All the Justices concur.*