Argued at Pendleton October 28, 1920, affirmed January 4, 1921.

# GIROUX v. BOCKLER.

(194 Pac. 178.)

**Specific Performance—Evidence Held to Show Inventory of Stock in Store Properly Taken.**

1. In a suit for specific performance of a contract for sale of a store, the preponderance of the testimony *held* to show that a substantially correct inventory was taken, after a few minor changes acquiesced in by the defendant, so that he cannot make failure to furnish an inventory an excuse for refusal to execute notes and make payments stipulated in contract.

**Specific Performance—Evidence Held not to Sustain Defendant Buyer's Claim of Fraudulent Representation of Volume of Business.**

2. In an action for specific performance of a contract selling a mercantile business, preponderance of the evidence *held* not to sustain defendant's claim of false representation as to the volume of business done.

**Specific Performance—Sale and Distribution by Receiver Held Proper Remedy for Performance of Contract Selling Mercantile Business.**

3. Where buyer of a corporation and its mercantile business assumed charge and subsequently refused to execute notes for payments stipulated, and seller brought suit for specific performance, and a receiver was appointed, a direction for sale of the property by the receiver to the highest bidder, proceeds to be used to pay expenses under receivership sale, unpaid bills contracted by defendant for goods, balance due to plaintiffs, less one half of receivership expenses due and transfer of the capital stock and remainder to the defendant as his share of the proceeds, *held* the proper remedy.

**Receivers—Order for Receiver Takes Effect from Date of Filing, not of Signature.**

4. Where the application for receiver was presented and the order signed before the complaint was filed, and the clerk corrected the discrepancy between the dates, the proceeding was not thereby rendered void, since the order took effect from date of its filing, not of signature.

**Receivers—Defendant's Inability to Handle Business Sufficient Cause.**

5. Where defendant bought a company doing a mercantile business, and failed to perform his part of the contract, the fact that defendant was not capable of handling so large a business success-

---

1. Specific performance of personal property contracts, see notes in 5 Ann. Cas. 269; 10 Ann. Cas. 934; Ann. Cas. 1915D, 788.

fully, and its management must result in bankruptcy for himself and the company, justifies the appointment of a receiver at seller's instance.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

This is a suit, among other things, to compel the specific performance of a written agreement signed by the defendant to purchase the capital stock of the Durkee Mercantile Company, a corporation operating a general store at Durkee, in Baker County.

The complaint, after alleging the ownership of the stock by plaintiff, sets up an agreement, which is as follows:

"This agreement made by and between Maurice Giroux, J. T. Giroux and J. I. Giroux doing business as Giroux Bros., and Charles Bockler; the said Giroux Bros. agree to sell to Charles Bockler all the capital stock of the Durkee Mercantile Company, the value of said stock to be determined by an inventory of all the merchandise at flat cost in the store, and store building and store fixtures excluding the Post Office fixtures, for the agreed price of $3,500 for said store building and fixtures and one acre of ground. The said Charles Bockler to pay for this stock as follows: Five thousand ($5,000) dollars, cash, balance to be settled by notes as follows: Two thousand dollars on or before April 1st, 1919; One thousand dollars on or before November 1st, 1919; One thousand dollars on or before November 1st, 1919; [sic] Bal. due on stock as per inventory on or before November 1st, 1920, and $3,500 on or before November 1st, 1921. Said notes to be deposited in the Citizens National Bank together with the certificates of stock, and said certificates of stock held as collateral until the notes are paid. The said Giroux Bros. to assume all indebtedness and collect all accounts outstanding at the time of the transfer. It is also understood and agreed that said Charles Bockler will keep stock, fixtures and building insured for value until notes are

paid. Eight per cent interest and interest paid semi-annually.

"Charles Bockler.<br>
"Giroux Bros.<br>
　　"By Treffle."

It is alleged that immediately after the execution of the agreement the parties thereto mutually made the inventory required therein, and thereby ascertained and determined the flat cost in the store, of the goods so inventoried to be approximately $12,000; said inventory and ascertainment of cost being completed on November 9, 1918, prior to which date defendant had paid to plaintiff in compliance with the terms of the agreement the sum of $5,000; that on said date defendant took over from plaintiffs and assumed complete possession and control of all the store building and fixtures of said company, together with all the goods and merchandise then owned by it, of all books and accounts of said company and all of its real and personal property of every kind and character whatever; and that the plaintiffs performed on their part all of the conditions of the contract, and delivered to defendant all of said property except the certificates of stock which were to be held in the Citizens National Bank of Baker, Oregon, as security to plaintiffs for the purchase price of the property.

Another paragraph details with greater particularity the property turned over to defendant, and alleges that on the date of so turning over the property the plaintiffs paid and satisfied all debts, contracts, and obligations of the Durkee Mercantile Company, and passed its books to defendant completely closed up, except as in the contract otherwise provided, so that defendant took said property subject to no debts or liabilities whatever; that he acquired in addition to said store building, merchan-

dise and fixtures, valuable rights in certain executory contracts for the purchase of goods; for the lease of lands; for the insurance of property; for the license to do business, and certain other choses of action; that plaintiffs completely withdrew from the business and affairs of the Durkee Mercantile Company; and that defendant has ever since been in the complete control thereof. The complaint sets forth at length the nature of the business transacted by the Durkee Mercantile Company, and alleges that in order to conduct the business profitably it was necessary that the stock of goods be kept up, and accurate accounts of the affairs of the store be kept, but charges that in these and many other particulars defendant had been negligent to the extent that there was danger that the business would become bankrupt.

It is charged that defendant sold merchandise to the amount of about $12,000, and had kept no account of such sale; that he was conducting the business in his own name and appropriating the proceeds to his own use; and that he had commingled a block of about $2,400 worth of his own goods with the stock of the Durkee Mercantile Company so that it was impossible to segregate them. In short, without going further into the prolix details of the complaint, its tenor and substance amounted to a charge that the business was being managed in a way that would ultimately destroy it, and thereby render the stock of the Durkee Mercantile Company valueless.

There was a prayer for an order enjoining defendant from further disposing of the property and merchandise; for a receiver *pendente lite;* for an order directing defendant to execute the notes specified in

98 Or.—26

the original contract; for a sale of the goods and property on hand to pay the amount due plaintiffs, and for general equitable relief.

A general demurrer was interposed and overruled. The defendant then answered, admitting that plaintiffs were partners, but denying generally every other allegation of the complaint except as thereafter affirmatively stated. The affirmative matter in brief is this: That for about two years before the execution of the contract set forth in the complaint defendant was conducting a country store at Pleasant Valley in Baker County; that about October 5, 1918, J. T. Giroux (usually called Treffle Giroux) came to defendant's store, and offered to sell him a stock of goods and a store building at Durkee, conducted by Giroux Brothers, and informed defendant that if he would buy said stock and building the plaintiffs would invoice and sell said goods at flat cost in the store, and to determine the flat cost he said that plaintiffs had and would furnish defendant the invoices and bills at the store, showing the same, and would sell defendant their store buildings, ground, and fixtures, excluding postoffice fixtures, for $3,500; that on October 12, 1918, defendant at the request of plaintiffs went to Durkee and looked over the store buildings and location, and plaintiffs for the purpose of deceiving defendant at that time informed him that the firm had at one time carried a stock of between $10,000 and $11,000, but that at that time it had run down to about $8,000; that for the same purpose plaintiffs falsely and fraudulently represented to defendant that Giroux Brothers were doing an average cash monthly business of from $3,300 to $3,500, which said statement plaintiffs

knew to be false, when in fact their cash business did not exceed $700 or $800 monthly; and that:

"The defendant had never been in plaintiff's store before said time, and had never been in the town of Durkee but once before, and had no knowledge or information as to the volume of the cash business being conducted by the plaintiffs, and that defendant at said time was in the plaintiffs' store but a very few minutes, and did not have sufficient time to examine or investigate the same, and at the said time the defendant had full and complete confidence in the said plaintiffs, and believed and relied upon the said plaintiffs' statements so made to him as aforesaid.

"That thereafter, and on or about the 25th day of October, 1918, the said plaintiff again came to the defendant's store at Pleasant Valley, Oregon, and again informed the defendant that the said stock of goods would invoice about the sum of $8,000, and that the cash business which the plaintiffs were doing at their said store at Durkee, Oregon, would average throughout the year at least $3,300 per month, and that the said firm was also doing a large credit business, and again assured the defendant that if the defendant would purchase the said stock of goods, buildings, and fixtures, the plaintiffs and the defendant would invoice the goods from the bills and invoices which the plaintiffs then had at the store at the actual cost price of said goods in the store, and that in making said invoice none of the goods which were unmerchantable or shelf-worn or unsalable would be invoiced, and that all such unmerchantable, shelf-worn, and unsalable goods would be removed from the store by the plaintiffs, and should not be included in the invoice by the plaintiffs; and the defendant at said time, believing the said statement, falsely and fraudulently made by the plaintiffs, that the plaintiffs were doing an average cash business at said store of not less than $3,300 per month, and relying upon the same, and believing that the plaintiffs would furnish the invoices and bills showing the flat

cost of the goods in the store, signed the said contract mentioned in plaintiffs' complaint, and then and there paid over to the plaintiffs the sum of $1,000.

"That thereafter, and on or about the 3d day of November, 1918, the defendant went to plaintiffs' store at Durkee, Oregon, and with the plaintiff Treffle Giroux commenced to list the goods in said store and warehouse of the plaintiffs, leaving the flat cost price of the goods to be inserted later; and for a short time the plaintiff Treffle Giroux and this defendant examined each article as listed, and thereupon at the suggestion of the plaintiff Treffle Giroux the said plaintiff, for the purpose of cheating and defrauding the defendant suggested to the defendant, that he would examine and call off the various articles, and defendant could enter the same in the list then being made; and thereupon the defendant did write down the articles as called off by the said plaintiff without examining the same or the boxes and packages in which the same were contained, and as the same were called off by the said plaintiff the defendant wrote the same in the list then being prepared from that time on until the full list, as plaintiff supposed, of all the goods in the store and warehouse had been listed, which said list was completed on or about the 9th day of November, 1918, after which the defendant paid to the plaintiffs the further sum of $4,000, paid in money and in government bonds, which bonds were accepted by the plaintiffs in lieu of cash; and the defendant thereupon left said store in charge of the plaintiffs, and returned to his store at Pleasant Valley, and packed up the stock of goods he then had on hand at his store, which were then and there of the reasonable value of the sum of $2,400, and caused the same to be shipped to the store of the plaintiffs at Durkee, Oregon, where the same were placed in the store and warehouse of the plaintiffs by the plaintiffs and by the defendant, and thereupon, and on the 23d day of November, 1918, the defendant went into the posses-

sion of the said store, warehouse, and stock of goods purchased from the plaintiffs as aforesaid.

"That the said list as prepared by the plaintiffs and the defendant as aforesaid was taken over by the plaintiff Treffle Giroux at the time the same was completed on November 9th, 1918, and remained in his possession until on or about the 24th day of December, 1918, during which time, without the defendant's knowledge or consent, the said plaintiff Treffle Giroux carried out and inserted opposite the different items contained in said list a false and fictitious valuation, which was far in excess of the flat cost price of substantially all of the items listed, and in addition thereto the said plaintiff Treffle Giroux, for the purpose of cheating and defrauding the plaintiff, added to the said list a large number of items, all of which were listed by the said Giroux after the list had been, as defendant was informed and believed, completed, and substantially all of said additional items were either unsalable and unmerchantable, or were not on hand at the time.

"That from the 9th of November, 1918, when said listing was completed as aforesaid up to the 23d day of November, 1918, the defendant left the plaintiffs in charge of said store, and took possession of said store on the 23d day of November, 1918; and, after being so in possession a short time, defendant discovered a large proportion of the boxes, cartons, and packages, which had formerly contained hats, shoes, and various items of merchandise had fraudulently been called off and listed as containing said articles of merchandise, but which were in fact at the time empty, and contained no article of merchandise, but were listed as merchandise on hand; but this defendant did not for a considerable time thereafter discover to the full extent the fraud of the plaintiff in calling off and having the defendant write down in the list the articles not on hand, but which were pretended to be on hand by the plaintiff in calling off the same in said empty cartons, boxes, and packages aforesaid; and on or about the 24th day of Decem-

ber, 1918, the plaintiff brought the said list, prepared as aforesaid, to the defendant, containing the said fraudulent additions, as aforesaid, and the items fraudulently called off and listed but not on hand, with the false and fictitious values placed opposite each of said items by the plaintiff, as aforesaid; and at said time the defendant refused to accept said list or the valuations placed thereon, and demanded a new appraisement and invoice of said. stock of goods, and demanded that the plaintiffs produce their invoices, showing the flat cost of the same, which the plaintiffs from day to day and up to about the 1st day of February, 1919, promised the defendant they would do, at which time the plaintiffs left this defendant in possession of said stock of goods, store buildings, and warehouse, and came to Baker and employed counsel to commence this suit; and thereupon defendant employed counsel, and a demand was made upon the plaintiffs either to repay to this defendant the $5,000 which the defendant had paid to the plaintiffs, or that the plaintiffs would with the defendant make a true and correct inventory and appraisement of the stock of goods, and determine the flat cost thereof according to the terms of said contract; and thereupon the plaintiffs refused to reinvoice the goods, or to repay to the plaintiff the sum of $5,000, or to have the stock of goods appraised by disinterested appraisers.

"That on account of the fraudulent practices on the part of the plaintiffs towards this defendant and the conversion of the goods made by the plaintiffs in securing the appointment of a receiver herein and in taking possession and ousting the defendant therefrom, the entire transaction between the plaintiffs and the defendant should be set aside, canceled and held for naught, and defendant should be reimbursed the sums of money by him expended and lost by him in the enterprise on account of the fraud practiced upon him by the plaintiffs as hereinbefore stated."

There were allegations attacking the fairness of the receiver, averments showing injury to defendant by reason of the alleged fraud committed, and a prayer for rescission and general equitable relief.

The new matter in the answer was put in issue by appropriate denials in the reply. A trial was had, resulting in findings and a decree for plaintiffs, which decree, omitting the formal portions, is as follows:

"That plaintiffs have and recover of and from defendant the sum of $10,390.33, together with interest on said sum at the rate of 8 per cent per annum, from and after the 9th day of November, 1918; and that the same is secured by and charge and lien upon the following properties, to wit: all the goods, wares, and merchandise in the warehouse and store building and appertaining to the stock of merchandise and business owned and operated by and in the name of the Durkee Mercantile Company, a corporation, up to the 9th day of November, 1918, in the town of Durkee, county of Baker, State of Oregon, and also upon the said store building and the one acre of land upon which said building stands, all of which properties are situated in said town of Durkee, county of Baker, State of Oregon, and which properties as between plaintiffs and defendant were the subject matter of sale in the contract of sale made and entered into by and between plaintiffs and defendant on or about the 22d day of October, 1918; and which said merchandise, store building and one acre of land upon which said building stands, together with the goods, wares, and merchandise brought by defendant and by him mingled with said property so sold into one inseparable whole, are now in charge and possession of the receiver heretofore appointed herein on the 15th day of April, 1919.

"It is further considered, ordered, and decreed that all of said properties, namely, the said stock of goods, wares, and merchandise, including the said

merchandise so brought and mingled by defendant with said general stock of merchandise as a whole, and also 'the said store building and the said one acre of ground upon which said building stands, be sold in the manner provided by law, and that said sale be made by said receiver after due notice of sale by publication, said publication of notice to be as provided by law in cases of sale under execution, and said sale to be so made to the highest and best bidder at the best obtainable price and for cash; and that the proceeds of such sale, when so made and confirmed, be applied until exhausted in the following order: (1) to the full payment of the expenses of said receivership and of said sale; (2) to any balance or unpaid bills or lawful obligations incurred by said defendant while in charge of said business from November 9, 1918, until April 15, 1919, in the purchase of merchandise so mingled with said general stock of merchandise; (3) to plaintiffs in the said sums for which they have judgment as aforesaid, less one-half of said receivership expenses, upon their duly transferring to defendant or his order all of the capital stock of the said Durkee Mercantile Company, a corporation; (4) the remainder, if any there be, and whatever the same may be, to said defendant as his interest in said proceeds: Provided, that such distribution shall be made only after said receiver shall have filed his report and account, and after the sale, so made shall have been confirmed.

"It is further considered, ordered, and decreed that neither party recovers costs or disbursements of the other."

The defendant appeals from this decree, assigning as error:

"The court erred in giving a decree to the plaintiffs.

"The court erred in not entering a decree in favor of the defendant as prayed for in defendant's answer.

"The court erred in appointing a receiver.

"The court erred in not removing the receiver and in denying the defendant's motion to remove the receiver.

"The court erred in overruling defendant's demurrer to the amended complaint, and in not sustaining said demurrer to said amended complaint.

"The court erred in striking out from defendant's answer to the amended complaint Paragraphs XIV and XV, and each thereof.

"The court erred in refusing to rescind the contract and to restore to the defendant the moneys paid by the defendant to the plaintiffs and the admitted value of the goods placed in the store by the defendant, to wit, the sum of $5,000 paid to the plaintiffs by the defendant, and the sum of $2,400, the admitted value of the goods placed in the store by the defendant, being his Pleasant Valley stock of goods, all of which moneys and goods came into the possession of the plaintiffs through the receiver appointed at the instigation of the plaintiffs.

"The court erred in not placing the defendant *in statu quo* as far as possible, when the records and files of the court in this case showed that the plaintiffs put it beyond the power of the defendant to perform the contract upon his part by the commencement of this suit and the appointment of a receiver, and by the proceedings enjoining the defendant from performing his contract in any respect.

"The court erred in decreeing a performance upon the part of the plaintiffs after it had been established by all of the evidence that the plaintiffs had never performed upon their part."　　AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. George E. Allen* and *Mr. John L. Rand.*

For respondents there was a brief with oral arguments by *Messrs. Nichols & Hallock.*

McBRIDE, J.—The length of the pleadings and the volume of the testimony have necessitated a preliminary statement exceeding the usual compass, and even with every abridgment possible it is difficult to make the issues tried entirely clear.

Leaving out of consideration the question of fraud assigned by the defendant as a reason for not complying with the terms of his agreement, we must determine by the terms of that covenant what the defendant promised to buy and plaintiffs agreed to sell. All previous negotiations and conversations of the parties, so far as the contract is not affected by false representations and deceit, are merged in that document. The written contract is not difficult of interpretation. The plaintiffs were contracting to sell and the defendant to buy all the stock of the Durkee Mercantile Company. It was an agreement for the sale of that stock. Incidentally, such purchase would give the defendant entire control of the merchandise and property of the company, the value of which represented the value of the stock, and without which the stock itself would be of little or no worth, unless the goodwill of the corporation had in itself some value. In the present instance the parties agreed upon the value of the store and the land upon which it stood, and agreed among themselves as to the method of fixing the value of the stock, or rather the amount that defendant should pay for it, by adding to the value of the store, fixtures, and ground, which was placed at $3,500, the flat cost of the merchandise as it should appear from an inventory to be taken for that purpose.

1. If the plaintiffs have seasonably furnished such an inventory, then defendant is in default, and has

violated the terms of his agreement, unless he was induced to enter into it by reason of the alleged false representations of plaintiff. The first question, therefore, is whether or not a true inventory was taken. We are of the opinion that the preponderance of the testimony indicates that an inventory substantially correct was taken, and after a few minor corrections was acquiesced in by the defendant. The method of taking it was seemingly by the consent of both parties, and, considering the fact that it was necessary to keep the store open and transact business while the inventory was progressing, it appears to have been a reasonable and convenient method. The parties worked in concert. The goods had upon them or upon the boxes containing them the cost mark of the Durkee Mercantile Company. This mark was explained to defendant, and was one that could be readily comprehended. The writer had no difficulty in understanding it from the brief explanation in the testimony. J. T. Giroux, because more familiar with the store, took down the goods and called the cost mark, which the defendant without objection wrote down in the inventory book; the extension or translation into dollars and cents being for the time omitted on account of the pressure of business. These extensions were subsequently made by J. T. Giroux in the evenings after business hours and the inventory after some minor corrections was turned over to the defendant, and while defendant has charged numerous fraudulent entries which to consider in detail would consume much space uselessly, he has, in our opinion, failed to establish by any preponderance of testimony the falsity of a single item. It is true that several witnesses testified as to their estimate of the

value of some articles mentioned, but much of the testimony discloses a lack of recent experience in the lines concerning which they testified, and the agreement did not provide for an inventory at the then present value of the articles, but at the original flat cost. Nor does this appear unfair when we consider that from 1916 to 1918 the prices of most classes of merchandise greatly advanced, so that depreciation in quality by time might be more than compensated by increase in the selling price of such portions of the stock as had been purchased prior to 1918. In addition to this, there is testimony of other witnesses for plaintiffs, of equal or greater experience and opportunity for observation, who estimate the value of the stock as quite equal to that shown in the inventory. After a careful examination of the whole testimony we are satisfied that the inventory prepared by the joint efforts of J. T. Giroux and defendant substantially complied with the written agreement, and that failure to furnish an inventory cannot be urged as an excuse for defendant's refusal to execute the notes and make the payments stipulated in the contract.

2. We will now consider the alleged false representations by reason of which defendant claims he was induced to enter into the contract of purchase. Chief among these is the claim that J. T. Giroux, acting for Giroux Brothers, represented that the Durkee Mercantile Company was doing a cash business of from $3,300 to $3,500 per month, when in fact it was doing a cash business of only $700 or $800 monthly. The sole testimony that such a representation was made is that of defendant, and this is stoutly denied and contradicted by the testimony of J. T. Giroux. As we have not the advantage of see-

ing the witnesses and observing their demeanor on the stand, and as there is nothing in their testimony on this point which should induce us to credit that of one above the other, we must necessarily find that this charge of fraud is not established by the preponderance of the testimony. Such evidently was the conclusion of the learned trial judge, who has filed a written opinion in this case. The same may be said of other alleged misrepresentations occurring prior to the execution of the written agreement.

3. As the case stands, we do not find sufficient evidence to permit us to hold that defendant had any legal or equitable justification for refusing to execute the notes or make the payments called for in the written agreement, and the only other subject that calls for extended discussion is the propriety of the remedy decreed by the Circuit Court. Upon this subject we quote from the opinion of the learned circuit judge:

"Plaintiffs' prayer is for general relief as well as for specific performance of the contract. Since there can be no rescission under the state of facts proved and no damages, and since by his acts in the premises defendant has in any event precluded a restoration of the *statu quo* either by return of the property or its equivalent, and has refused to carry out that part of the contract which calls for execution of the promissory notes, plaintiffs would be entitled to a decree carrying out the provisions of the contract in its ultimate effect. No such decree, however, can be entered or enforced as to compel the execution of promissory notes and compelling the faithful conduct of the business until such notes become due; nor can the court by any decree and through a receiver assume to superintend such a business with its numerous details during so great a length of time.

"By the written contract defendant agreed to exe-cute and pay when due interest-bearing notes as fol-lows: $2,000 due April, 1919; $1,000 due November 1, 1919; the balance of the inventory price of the merchandise November 1, 1920; and $3,500, the agreed value of the realty, due November 1, 1921. His default consists in his refusal to pay the amounts past due and in refusing to execute the notes as agreed to.

"It is further to be observed that under the terms of the written contract and the negotiations between the parties the defendant was given possession of the property, with power and authority to sell the merchandise and from such sales to pay the promis-sory notes. The foregoing outlines the only remedy whereby the contract as a whole may by a decree be carried out in its ultimate effect, having in mind in this connection the facts heretofore mentioned that the negotiations and the manner and means whereby the parties set about to carry the written contract into effect incontrovertibly establish that the mer-chandise and the store and ground were, upon com-pletion of the payments of the notes, to be the prop-erty of defendant, while in the meantime the funds whereby those notes were to be paid were to be realized by defendant from sales of that merchan-dise. Under such state of facts the seller could not maintain *assumpsit* as upon such notes as would not, under the terms of the contract, be due at the time of commencement of the suit; but where the defend-ant is in default in payments that were due and he also refuses to perform the contract by executing the notes that would become due, at the future dates under the terms of the contract, the seller is on such state of facts entitled to the remedy against such breach by immediate enforcement of the whole obli-gation, such right existing by reason of the buyer's breach of agreement as a whole: 24 R. C. L., pp. 97, 98; *Kelley* v. *Pierce,* 16 N. D. 234 (112 N. W. 995, 12 L. R. A. (N. S.) 180); *Stephenson* v. *Repp,* 47 Ohio St. 551 (25 N. E. 803, 10 L. R. A. 620); *Pasha*

v. *Bohart,* 45 Mont. 76 (122 Pac. 284, Ann. Cas. 1913C, 1250).

. ''Before outlining in terms what is in the opinion of the court the only proper and consistent remedy, reference may be had to the matters of what occasioned the necessity of a receiver and the consequent expenses thereof, with a view to equitable adjustment in view of all the circumstances. On the one hand, had the defendant executed the notes and proceeded to manage the business in the manner each of the parties contemplated, the plaintiffs could have had no cause of suit until those notes became due, unless he violated the agreement in the meantime. Such a course, had it been chosen, could not have deprived defendant of adjustment of or redress for any errors, mistakes, or other defects, if any, that might exist, and not open and known to him at the time, and which he might, while acting in good faith, subsequently discover. For reasons that appear obvious in view of the nature of the contract, had the contract been thus consummated, self-interest of each of the parties to the present controversy would itself have virtually compelled co-operation to the end of the success of defendant's venture. On the other hand, had plaintiffs proceeded as greater care and prudence would have suggested, no absolute delivery of possession and control and no mingling of goods should have been permitted until the transaction was closed and the notes delivered simultaneously. In either of these events the transaction would have been either wholly consummated or wholly rescinded. These circumstances, however, do not obviate or alter the fact that defendant did take possession and thereupon proceeded as heretofore mentioned and obligated himself as stated above. The result was the necessity of a receiver. That does not effect the remedy, except that in view of all those circumstances the court is of the opinion that when it comes to application of the proceeds, from which the expenses of the receivership must be met, those expenses should be so apportioned as to be

borne equally between plaintiffs and defendants: 23 R. C. L. 106.

"In connection with the remedy heretofore suggested, the following facts are observed: That the legal title to the property named, i. e., the merchandise and the realty, was not under the agreement vested in defendant, but he has an equitable interest therein by virtue of the agreement and the payments he made; that the subsequent payments to be made were in the main to be realized from sales of the merchandise; that the merchandise and the realty together constitute the buisness institution—the property involved in the contract; that defendant continued as long as he was in charge so to mingle the merchandise delivered into his possession by plaintiffs with the merchandise that he brought and later supplied, and so mingled the proceeds of sales made from the indiscriminate whole, and so managed and treated the same as one and the same stock and as one fund and as one business that it cannot be segregated.' Therefore, and consistent with the ultimate effect of the contract, and those several acts, the only available remedy whereby the rights of each are subserved and enforced is a decree for the payment of the balance due under the contract, to be secured by sale of the property in question, such sale to be effected by and through the receiver at the highest obtainable price after due publication of notice of such sale; and the proceeds of such sale, when such sale shall have been confirmed to be applied in the following order: To the expenses of the receivership and of the sale; to any unpaid bills contracted by defendant in the purchase of goods thus mingled; to the balance found due to plaintiffs, less one half of said receivership expenses, upon due transfer of all of the capital stock; the remainder to the defendant as his interest in such proceeds. In connection with the authorities last cited, see 24 R. C. L., pp. 445, 446, par. 744; 23 R. C. L., p. 98; 39 Cyc. 1794. The court is further of the opinion that

upon equitable principles neither party should recover costs or disbursements of the other.''

These observations appear sound, and we adopt them.

4. Incidentally, a question is raised as to the legality of the appointment of a receiver in the first instance. The application was presented to the judge before the complaint was filed, and the order was then signed and dated by him, either upon the theory that the complaint had already been filed or that the order and complaint would be filed on that date, which was April 14, 1918. The complaint and order were taken to the clerk on the morning of April 15th, and he noticed the discrepancy between the date of filing and the date of making the order, which he corrected by erasing the original date and inserting the figures ''15th.'' The date attached by the judge was evidently an inadvertence; but, as the order took effect only upon the date of its filing, and not upon the date of the signature, it was not such an irregularity as would render the proceeding void. The filing gave the order validity, not the date affixed to it; *Smith* v. *City of New York* (Super. Ct.), 4 N. Y. Supp. 449; *Young* v. *Hamilton,* 135 Ga. 339, (69 S. E. 593, Ann. Cas. 1912A, 144, 31 L. R. A. (N. S.) 1057). It further appears that while the court disregarded the objection made to the regularity of Mr. Glenn's appointment, it did, on May 12, 1918, reappoint him, so that at the time of the trial there was no question as to the regularity of his appointment. We think, however, that the original appointment was sufficient.

5. It seems evident from the testimony that while a man of wider business experience and greater

business capacity might have succeeded in the mercantile venture which the defendant embarked upon, it was a larger business than he was capable of handling successfully, and that the result of his management would have been the bankruptcy of the company and of himself, if he had been permitted to continue in charge. We think the court acted wisely in appointing a receiver, and nothing appears in the testimony to indicate that as such officer Mr. Glenn in any way has discriminated between the parties to the litigation. The fact that some years before he had been a clerk in the employ of the Durkee Mercantile Company may well have been a reason for his appointment, inasmuch as his familiarity with the business and with the customers of the concern would enable him to perform his duties as a salesman to greater advantage than would be the case with a stranger.

The decree of the Circuit Court is affirmed.

AFFIRMED.